# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3151

_____

Sarah Kristine Tichich

*Plaintiff - Appellant*

v.

City of Bloomington; City of Cannon Falls; City of Lakeville; City of Maple Grove; City of Marshall; City of Minneapolis; City of Ramsey; City of Richfield; City of Robbinsdale; City of Rosemount; City of St. Anthony; City of Woodbury; Hennepin County; Mille Lacs County; Minneapolis Park and Recreation Board; Ramsey County; Rice County; Sherburne County; Wright County; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does, (1-300) acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does, (1-30) acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; Entity Does, (1-30) including cities, counties, municipalities, and other entities sited in Minnesota

*Defendants - Appellees*

_____

No. 14-3188

_____

Cynthya Lou Porter

*Plaintiff - Appellant*

v.

City of Brooklyn Park; City of Caledonia; City of Goodview; City of Maplewood; Martin County; Olmsted County; City of St. Paul; Winona County; Dakota County; City of Winona; Metropolitan Airports Commission; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does 1-600, acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Does 1-30, acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; Entity Does 1-50, including cities, counties, municipalities, and other entities sited in Minnesota

*Defendants - Appellees*

_____

No. 14-3225

_____

Laureen Cay Barghini

*Plaintiff - Appellant*

v.

Anoka County; City of Bloomington; City of Brainerd; City of Brooklyn Park; City of Burnsville; City of Champlin; Dakota County; Dakota Communications Center; City of Edina; City of Farmington; Hennepin County; City of Hopkins; City of Minneapolis; City of Minnetonka; City of Mound; City of New Brighton; City of North St. Paul; Ramsey County; City of Robbinsdale; City of Rochester; City of St. Paul; Stearns County; City of White Bear Lake; Wright County; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1-250), acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Entity

-2-

Does (1-50), including cities, counties, municipalities, and other entities sited in Minnesota; Department of Public Safety Does (1-30), acting in their individual capacity as officers, supervisors, staff, employees, individual contractors or agents of the Minnesota Department of Public Safety

*Defendants - Appellees*

_____

No. 14-3288

_____

Timothy Wallace Sherno

*Plaintiff - Appellant*

v.

Anoka County; City of Apple Valley; City of Arlington; City of Baudette; Beltrami County; City of Blackduck; City of Blaine; City of Bloomington; City of Brooklyn Center; City of Brooklyn Park; City of Burnsville; City of Cannon Falls; Cargo Van Go, Inc.; Cars-N-Credit, Inc.; Carver County; Cass County; City of Champlin; Chisago County; City of Cottage Grove; Crow Wing County; City of Crystal; Dakota County; City of Deephaven; City of Eden Prairie; City of Edina; Faribault County; City of Farmington; City of Foley; City of Forest Lake; City of Fridley; City of Golden Valley; Goodhue County; City of Green Isle; Grant County; City of Hastings; City of Henderson; Hennepin County; City of Hopkins; City of Inver Grove Heights; Kanabec County; Kandiyohi County; City of Lake Crystal; Lake of the Woods County; Lakes Area Police Department; City of Le Sueur; City of Mankato; McLeod County; City of Medina; Metropolitan Council; Mille Lacs County; City of Minneapolis; City of Minnetonka; City of Minnetrista; City of Mora; City of Mounds View; Minneapolis Park & Recreation Board; City of New Brighton; City of North St. Paul; City of North Mankato; City of Onamia; City of Orono; Pine County; City of Prior Lake; Ramsey County; City of Ramsey; City of Red Wing; Rice County; City of Richfield; City of Robbinsdale; City of Rochester; City of Rosemount; City of Roseville; City of Royalton; City of Savage; Scott County; City of Shakopee; City of Sherburne; Sherburne County; City of South St. Paul; City of Spring Lake Park; City of St. Anthony; City of St.

Cloud; City of St. Francis; St. Louis County; City of St. Louis Park; City of St. Paul Park; City of St. Paul; City of St. Peter; City of Walnut Grove; Waseca County; Washington County; City of Waterville; City of Welcome; City of White Bear Lake; City of Woodbury; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1-600), acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30), acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; Entity Does (1-150), including cities, counties, municipalities, and other entities sited in Minnesota

*Defendants - Appellees*

_____

No. 14-3750

_____

Jay Clifton Kolls

*Plaintiff - Appellant*

v.

City of Edina; City of Minneapolis; City of Mound; City of Orono; Dakota Communications Center; Renville County; City of Rosemount; City of Savage; City of Shakopee; City of St. Paul; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1-50), acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30), acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; Entity Does (1-50), including cities, counties, municipalities, and other entities sited in Minnesota

*Defendants - Appellees*

_____

No. 15-1288

_____

Alix Kendall

*Plaintiff - Appellant*

v.

City of Albert Lea; City of Annandale; Anoka County; City of Anoka; City of Apple Valley; City of Baxter; City of Becker; City of Belle Plaine; Beltrami County; City of Biwabik; City of Blackduck; City of Blaine; City of Blooming Prairie; City of Bloomington; Blue Earth County; City of Brainerd; City of Brooklyn Center; City of Brooklyn Park; Brown County; City of Buffalo Lake; City of Burnsville; City of Cambridge; City of Cannon Falls; Carver County; Centennial Lakes Police Department; City of Champlin; City of Chaska; Chippewa County; Chisago County; City of Columbia Heights; Cook County; City of Coon Rapids; City of Corcoran; City of Cottage Grove; City of Crosby; City of Crosslake; Crow Wing County; City of Crystal; Dakota County; Dakota Communications Center; City of Deephaven; City of Duluth; City of Eagan; City of Eden Prairie; City of Edina; City of Elk River; City of Elmore; City of Fairmont; Faribault County; City of Faribault; City of Farmington; City of Forest Lake; Freeborn County; City of Fridley; City of Glencoe; City of Golden Valley; Goodhue County; City of Grand Rapids; City of Hastings; City of Henderson; Hennepin County; City of Hermantown; City of Hopkins; City of Howard Lake; Hubbard County; City of Hutchinson; City of Inver Grove Heights; Isanti County; City of Isle; City of Jordan; Kanabec County; Kandiyohi County; City of Lake City; City of Lake Crystal; City of Lakeville; City of Le Center; Le Sueur County; City of Le Sueur; City of Lino Lakes; City of Litchfield; City of Mankato; City of Maple Grove; City of Maplewood; City of Marshall; McLeod County; City of Medina; Meeker County; City of Mendota Heights; Metropolitan Council; City of Milaca; Mille Lacs County; City of Minneapolis; City of Minnetonka; City of Minnetrista; City of Moorhead; City of Mora; City of Morris; Morrison County; City of Mound; City of Mounds View; Mower County; City of New Brighton; City of New Hope; City of New Prague; City of New Ulm; City of North St. Paul;

City of Northfield; City of Oak Park Heights; City of Oakdale; Olmsted County; City of Onamia; City of Orono; City of Osakis; City of Owatonna; City of Perham; Pine County; City of Plymouth; City of Princeton; City of Prior Lake; Ramsey County; City of Ramsey; City of Randall; City of Red Wing; Rice County; City of Richfield; City of Robbinsdale; City of Rochester; City of Rogers; City of Rosemount; City of Roseville; City of Royalton; City of Sartell; City of Sauk Centre; City of Savage; Scott County; City of Shakopee; Sherburne County; City of Silver Lake; South Lake Minnetonka Police Department; City of South St. Paul; City of Spring Lake Park; City of St. Anthony; City of St. Cloud; City of St. Francis; City of St. Joseph; St. Louis County; City of St. Louis Park; City of St. Paul; City of St. Paul Park; City of St. Peter; City of Staples; City of Starbuck; Stearns County; Steele County; Tri-City Police Department; Todd County; City of Tyler; City of West St. Paul; City of Wabasha; Wadena County; City of Waite Park; Waseca County; City of Waseca; Washington County; City of Waterville; Watonwan County; City of Wayzata; City of White Bear Lake; City of Willmar; City of Winona; City of Woodbury; Wright County; City of Wyoming; City of Zumbrota; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of Public Safety; Entity Does (1-30), including cities, counties, municipalities, and other entities sited in Minnesota; City of Amboy; City of Arlington; John and Jane Does (1-100), acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30), acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; City of Green Isle; Buffalo Automotive, Inc.; Cars-N-Credit, Inc.; Deml Ford Lincoln, Inc.; Lakes Area Police Department; Upper Midwest Organ Procurement Organization, Inc.; Sexton-Posch, LLC; City of Sherburne; City of Vernon Center; Waconia Dodge, Inc.; City of Welcome; Grant County; Benton County; Cass County; City of Isanti; Minneapolis Park & Recreation Board; City of North Branch; Redwood County; City of Sauk Rapids; City of Stillwater

*Defendants - Appellees*

_____

No. 15-1846
_____

Ashley Arcaro, also known as Ashley Trainer

*Plaintiff - Appellant*

v.

City of Anoka; City of Brooklyn Park; City of Clarkfield; City of Fridley; City of Golden Valley; City of Grand Rapids; City of Jordan; City of Le Center; City of Mankato; City of Maple Grove; City of Maplewood; City of Minneapolis; City of Minnetonka; City of Mound; City of North St. Paul; City of Orono; City of Owatonna; City of Rochester; City of Rosemount; City of Roseville; City of Sartell; City of Savage; City of Shakopee; City of West St. Paul; Anoka County; Mille Lacs County; Morrison County; Scott County; Washington County; Wright County; Yellow Medicine County; John and Jane Does (1-500), acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other named law-enforcement agencies

*Defendants - Appellees*
_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: December 15, 2015
_____

-7-

_____

No. 14-2964
_____

Michelle Mary Ray

*Plaintiff - Appellant*

v.

Anoka County; City of Big Lake; City of Bloomington; City of Brooklyn Center; City of Brooklyn Park; City of Burnsville; City of Champlin; City of Corcoran; City of Elk River; Hennepin County; City of Maple Grove; City of Minneapolis; City of Osseo; City of Ramsey; Sherburne County; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1-100) acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30) acting in their individual capacity as officers, supervisors, staff, employees, independent contractors, or agents of the Minnesota Department of Public Safety; Entity Does (1-500) including cities, counties, municipalities, and other entities sited in Minnesota

*Defendants - Appellees*
_____

No. 14-3404
_____

Diane Catherine Gavin

*Plaintiff - Appellant*

v.

-8-

Anoka County; City of Apple Valley; City of Arlington; City of Bloomington; City of Brainerd; City of Brooklyn Park; Clay County; City of Cottage Grove; City of Duluth; City of Elko New Market; City of Green Isle; City of Hastings; Hennepin County; City of Madelia; City of Maplewood; Metropolitan Council; City of Minneapolis; Minneapolis Park and Recreation Board; City of Mound; City of Nisswa; Olmsted County; City of Princeton; City of Prior Lake; Ramsey County; City of Richfield; City of St. Paul; City of St. Paul Park; Washington County; City of Woodbury; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1-500), acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30), acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; Entity Does (1-50), including cities, counties, municipalities, and other entities sited in Minnesota

*Defendants - Appellees*

_____

No. 14-3448

_____

Brian Potocnik

*Plaintiff - Appellant*

v.

City of Minneapolis; City of St. Paul; John and Jane Does (1-300), acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of Minneapolis or St. Paul

*Defendants - Appellees*

-9-

_____

No. 14-3673
_____

Douglas Paul Delaney; Nancy Marie Delaney

*Plaintiffs - Appellants*

v.

Beltrami County; City of Bloomington; City of Brainerd; Carlton County; Crow
Wing County; City of Eden Prairie; City of Hancock

*Defendants - Appellees*

Hennepin County; Hire Right, a Delaware Corporation

*Defendant*s

Kanabec County; City of Minnetonka; City of Mound; Metropolitan Airport
Commission; City of Rosemount; St. Louis County; City of St. Paul; Michael
Campion, in his individual capacity as the Commissioner of the Department of
Public Safety; Ramona Dohman, in her individual capacity as the Commissioner
of the Department of Public Safety; Entity Does (1-30), including cities, counties,
municipalities, and other entities sited in Minnesota; Department of Public Safety
Does (1-30), acting in their individual capacity as officers, supervisors, staff,
employees, independent contractors or agents of the Minnesota Department of
Public Safety; John and Jane Does (1-150), acting in their individual capacity as
supervisors, officers, deputies, staff, investigators, employees or agents of the
other governmental agencies

*Defendants - Appellees*

-10-

_____

No. 15-1805
_____

Nadine Babu

*Plaintiff - Appellant*

v.


City of Becker; Benton County; City of Blaine; City of Bloomington; City of
Cottage Grove; City of Eagan; City of Eden Prairie; Fillmore County; City of
Hopkins; City of Lake Crystal; City of Minneapolis; City of Minnetonka; City of
Moorhead; City of Orono; Sherburne County; Washington County; Michael
Campion, in his individual capacity as the Commissioner of the Department of
Public Safety; Ramona Dohman, in her individual capacity as the Commissioner
of the Department of Public Safety; Minnesota Department of Public Safety Does
(1-30), acting in their individual capacity as officers, supervisors, staff, employees,
independent contractors or agents of the Minnesota Department of Public Safety;
Entity Does (1-50), including cities, counties, municipalities, and other entities
sited in Minnesota

*Defendants - Appellees*
_____

No. 14-3651
_____

James Roschen; Megan Roschen; Laura Drazkowski; Kinsey Drazkowski; David
Harms; Beverly Snow; Jerry Snow; Jerry Gelao; John Adams; Donna Adams;
Virginia Kautz; Julie Porcher

*Plaintiffs - Appellants*

-11-

Marlin Graves; Karen Graves

*Plaintiff*s

Debra Roschen; Steve Drazkowski; C. Merl Norman; Anna Mae Norman

*Plaintiffs - Appellants*

v.

Wabasha County; Anoka County

*Defendants - Appellees*

Anoka County Community Corrections; Dylan Warkentin, Director, Anoka County Community Corrections, in his individual and official capacity

*Defendant*s

Benton County; Blue Earth County; Blue Earth County Community Corrections; Josh Milow, Director, Blue Earth County Community Corrections, in his individual and official capacity; Chisago County; Dakota County; Dodge County; Douglas County; Faribault County; Goodhue County; Hennepin County

*Defendants - Appellees*

Hennepin County Community Corrections; Tom Merkel, Director, Hennepin County Community Corrections, in his individual and official capacity

*Defendant*s

Jackson County; Lake County; Martin County; Mille Lacs County; Nicollet County; Olmsted County; Ottertail County; Ramsey County; Renville County

*Defendants - Appellees*

-12-

St. Louis County

*Defendant*

Scott County; Steele County; Washington County; Winona County; Wright County

*Defendants - Appellees*

Ramona Dohman, acting in her individual and official capacity as Commissioner of Public Safety; Lori Swanson, in her individual capacity and official capacity as Attorney General of Minnesota; Colonel Kevin Daly, in his individual capacity and official capacity as Chief of State Patrol of Minnesota; Lucinda Jesson, in her individual and official capacity as Commissioner of Minnesota Department of

Human Services; Tom Roy, in his individual capacity and official capacity as Commissioner of Minnesota Department of Corrections

*Defendant*s

City of Austin; City of Cannon Falls; City of Chaska; City of Cloquet; City of Duluth; City of Eagan; City of Fairmont; City of Hastings; City of Lake City; Lakes Area Police Department; City of Medina; City of Minneapolis; City of Minnetonka; City of Oakdale; City of Park Rapids; City of Plainview; City of Prior Lake; City of Red Wing; City of Richfield; City of Rochester; City of Rosemount; City of Roseville; City of Sartell; City of St. Cloud; City of Saint Paul; City of Staples; City of Stillwater; City of Wabasha; City of Waterville; City of Wells; City of White Bear Lake; City of Winona; Fond du Lac Police Department; Metro Transit Police Department

*Defendants - Appellees*

John and Jane Does (1-1000), acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of law enforcement agencies sited in Minnesota; Department of Public Safety Does (1-30), acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; Entity Does (1-50), including cities, counties, municipalities, district courts, court services and

other entities sited in Minnesota; Jeff Shorba, in his individual capacity and official capacity as State Court Administrator

*Defendant*s

City of Deerwood; City of Goodview; City of Kasson; City of Kenyon; City of Mantorville

*Defendants - Appellees*

_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 16, 2015

_____

Filed: September 1, 2016

_____

Before WOLLMAN, LOKEN, and BYE, Circuit Judges.[1]

_____

WOLLMAN, Circuit Judge.

The Minnesota Department of Public Safety (DPS) maintains a database of driver's license data (DPS database). It is the alleged misuse of that database information which is the subject of these appeals.

A number of Minnesota driver's license holders (plaintiffs) brought suit against numerous cities, counties, and other government entities (local entities); numerous

_____

[1]This opinion is being filed by Judge Wollman and Judge Loken pursuant to 8th Cir. Rule 47E.

-14-

unknown law enforcement or other government personnel, and supervisors, officers, deputies, staff, investigators, employees or agents of local entities or other government entities in Minnesota (collectively, Law Enforcement Does); current and former DPS Commissioners Ramona Dohman and Michael Campion (collectively, Commissioners); and various unknown officers, supervisors, staff, employees, independent contractors, and agents of DPS (collectively, DPS Does). The complaints allege that the above-described entities and individuals (defendants) violated the Driver's Privacy Protection Act (DPPA or Act), 18 U.S.C. §§ 2721-2725, by accessing or disclosing personal information from the DPS database without a permissible purpose. The district courts dismissed the actions for failure to state a claim. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

Our opinion in McDonough v. Anoka County, 799 F.3d 931, 937-38 (8th Cir. 2015) (McDonough), cert. denied, 136 S. Ct. 2388 (2016), discussed the history, purpose, and applicability of the DPPA, and so we do not repeat that discussion here.

The present appeals raise issues similar to those presented in McDonough and are governed by our holdings in that case, one of which is that the four-year statute of limitations set forth in 28 U.S.C. § 1658(a) begins to run when a DPPA violation occurs. McDonough, 799 F.3d at 943. We also held that each defendant's alleged conduct must be assessed independently to insure that plaintiffs had pleaded sufficient facts regarding that defendant's impermissible purpose to state a facially plausible claim to relief against it. Id. at 946. We discussed the suspicious access and timing patterns that would nudge some of the claims "'across the line from conceivable to plausible.'" Id. at 947 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

We assessed each defendant's alleged conduct independently to ensure that the facts pleaded regarding that defendant's impermissible purpose were sufficient to state a plausible claim against that defendant. Id. at 946.

We held that allegations were not to be assessed in isolation, that the complaint should be read as a whole, and that time-barred claims could be considered in assessing the plausibility of timely filed claims. Id. at 946. We said that in the absence of allegations of concerted activity, "something more is needed to nudge the allegations across the line of plausibility and tie the conduct of specific Defendants to a more general inference of impermissible purpose." Id. at 947. We noted that generalized allegations merely consistent with the liability of any particular defendant are insufficient to cross the line of plausibility in the absence of allegations of concerted activity. Id.

We analyzed the allegations for any evidence of a degree of local fame or of a relationship between the plaintiff and particular officers or agents of the local entities and whether the alleged access occurred in such a way as to correspond with a significant event that could explain the interest in the plaintiff's personal information. We also looked for any suspicious access and timing patterns, such as accesses on the same day or within a short time span through multiple unrelated agencies. Id. We viewed a pattern of late-night accesses as possibly resulting from less supervision during those hours and out of boredom, curiosity, or romantic interest.

We held that the plaintiffs' allegations of high volumes and suspicious timing of accesses, coupled with the legislative auditor's report, which found that at least half of Minnesota's law enforcement officers were misusing personal information in the database, sufficiently rebutted the presumption of regularity usually accorded to public officers. Id. at 948.

We concluded that the plaintiffs' complaints that merited consideration fell within one of the following categories:

> 1) accesses on the same day as or within a few hours of accesses by other, unrelated entities during the limitations period; 2) multiple late-night accesses during the limitations period; or 3) a history of frequent suspicious accesses fitting the above criteria, even if prior to the limitations period, coupled with accesses within the limitations period.

Id. at 950.

We recognized the concern that the district courts had voiced about the lack of a coherent and workable way to distinguish between those claims that could be fairly said to satisfy the standard of plausibility and those that do not, and we acknowledged that making that determination might well be an arduous, time-consuming process. Id. at 948. Likewise, we acknowledge here that while the "something more" required in the absence of allegations of concerted activity may be viewed as an imprecise measure of line-drawing, it serves to distinguish intuitively from factually plausible claims.

We affirmed the dismissal of the claims against the Commissioners and DPS Does, id. at 957, and we enter a similar ruling with respect to those defendants in these cases.

Before turning to the individual complaints in this group of cases, we reject the requests that we expand our holding in McDonough to say that all timely pled accesses should be read as stating a plausible DPPA claim, that time-barred accesses should be addressed separately from timely raised claims, and that a showing of plausibility against a few entities should be extended to all of the entities. Such extension of McDonough's reach would in effect result in the imposition of collective

rather than the individual liability contemplated by McDonough, something we decline to do.

We clarify McDonough by holding that sequential accesses occurring within a several-minute time span should be considered as one obtainment rather than several. While these close-in-time accesses fall within the technical meaning of "obtainment" as explained in McDonough, 799 F.3d at 944, in the absence of evidence to the contrary, we will view them as constituting one continuous gaining or acquiring of the same information by the same user at the same time, rather than as separate time-punctuated accesses.

Finally, we express our appreciation for the parties' post-McDonough supplemental briefs, which have been of assistance in our review of these cases.

We turn, then, to the individual cases before us.

II.

1. Sarah Kristine Tichich's Complaint

Tichich competed in many beauty pageants and was named Mrs. Minnesota United States in 2007. She competed in the Mrs. Minnesota America pageant in 1991, 2001, 2005, 2006, and 2011, as well as in several other pageants when she was a teenager. She alleges that although she has no history of criminal activity and has never been the subject of criminal investigation, law enforcement officers retrieved her personal information approximately 210 times between 2003 and 2013, with the retrievals taking place on all days of the week and at all times of the day and night.

Tichich filed her complaint on January 31, 2014, with the result that all claims based upon pre-January 31, 2010, are barred by the statute of limitations. Within the

limitations period, one access was requested by Maple Grove officers, one by Robbinsdale officers, two by Rice County officers, and one by an employee of the Hennepin County Sheriff's Office. Having considered these within-limitations accesses in light of the pre-limitations accesses requested by these entities, we conclude that they do not reveal the suspicious access or timing patterns necessary to render the allegations plausible.

Tichich alleged that City of Minneapolis Police Officers accessed her private data ninety-seven times during the period from January 28, 2005, to March 27, 2012. She has not alleged that any late-night accesses by Minneapolis law enforcement officers occurred within the limitations period. Of the eleven within-limitations accesses, one user accessed Tichich's information at 8:27 p.m. on May 14, 2010, and at 8:27 p.m. on September 21, 2010. One user made four accesses within a minute of each other. The remaining accesses occurred at different times, different dates, and by different users. In a word, the accesses do not reveal a pattern that would indicate that they were unlawful or unpermitted.

Likewise, we conclude that the within-limitations accesses that occurred in the remaining local entities are insufficient to raise Tichich's complaint against them to the level of plausibility.

The district court's dismissal of the complaint is affirmed in its entirety.

## 2. Laureen Cay Barghini Complaint

Barghini is a radio personality who has hosted for some twelve years a show on Mytalk 107.1 entitled "Lori and Julia," which airs in the Minneapolis/St. Paul area and is accessible statewide. She regularly interacts with celebrities through her radio show, her professional image has appeared on several promotional advertisements

throughout the state, and she has been featured in several newspaper and magazine articles that described her work as a radio personality.

Her complaint alleges that law enforcement officers retrieved her personal driver's license information more than 200 times between 2003 and 2012, with the accesses occurring on all days of the week and at all times of the day and night. She filed her complaint on January 31, 2014, which renders time-barred any pre-January 31, 2010, claims.

Barghini's complaint alleged four late-night within-limitations accesses by the Bloomington Police Department. Two of these occurred on February 26, 2010, one on April 13, 2010, and one on July 12, 2010. These accesses are insufficient in number and pattern to satisfy the plausibility test set forth in McDonough. Likewise, the within-limitation accesses by the other local entities named in Barghini's complaint are not late-night, nor do they exhibit a pattern of frequency or timing that would give rise to a plausible claim. We thus affirm the district court's dismissal of the complaint as against all of the local entities, as well as against all other defendants.

### 3. Cynthya Lou Porter

Porter was a reporter and news editor for the Winona Post between November 2001 and August 2011, during which time she wrote many articles about the Winona community, social issues, criminal trials, disputes involving governmental agencies, departments, and officials, as well as about the judicial system and law enforcement, winning state, national, and international awards for her reporting. She interviewed a number of law enforcement officers and developed working relationships with them. She provided significant volunteer community service with several organizations, receiving an award from one of them in 2005. Her community involvement resulted in additional interactions with law enforcement officers, some

of whom expressed romantic interest in her and met her socially on different occasions.

Porter's complaint alleges that personnel from some eleven agencies, counties, and cities obtained her personal information some 500 times from 2003 to January 27, 2014, the date her complaint was filed. We thus look to see whether the post-January 27, 2010, within-limitations accesses are sufficient in number, timing, and pattern, even when viewed in conjunction with the time-barred accesses, to state a plausible claim.

The complaint alleges that "[o]fficers employed by, licensed by, or otherwise accessing through Olmstead County [sic[2]]" obtained her information on February 14, 2011, at 7:05 a.m. and 7:06 a.m., which we consider as a single access. Porter's complaint and her brief fail to state any connection or pattern regarding this sole access and any social or work connection with any Olmsted County employee.

The complaint alleges some ten within-limitations accesses, eight of which were based upon license plate or vehicle identification number and not by name. The two other accesses occurred some five months apart during daytime hours. The sole Goodview police inquiry was by license plate number and not by name.

The complaint alleged three within-limitations daytime accesses by Winona County personnel, one on August 5, 2010, one at 8:05 p.m. on October 17, 2011, followed by one at 8:07 p.m. the same day. The complaint alleged one late-night within-limitations access by Winona County.

---

[2]The complaint refers to Olmsted County as "Olmstead County." We will use the correct spelling.

The above-described accesses cannot fairly be considered as suspicious, because they were not obtained during the same day or within a few hours of within-limitations accesses by other unrelated entities. McDonough, 799 F.3d at 950.

We noted in McDonough the significance of personnel information that was obtained by way of a name rather than by a license-plate query. Id. at 939. Because the majority of the Winona County accesses were obtained by number, they do nothing to bolster any claim of plausibility, and thus we affirm the dismissal of the complaint against all of the local entities named in Porter's complaint.

4. Timothy Wallace Sherno Complaint

Sherno's complaint alleges that he is a twenty-plus-year award-winning broadcaster, anchoring the morning news at KMSP-TV in Eden Prairie, Minnesota, from 1999 through 2005, followed by working as a reporter at 5 EYEWITNESS NEWS in Minneapolis and St. Paul. He has had contact with law enforcement personnel with respect to the stories he has covered. He was the reporter who broke the story in what is referred to as the Rasmussen case, which brought to the public's attention the misuse of the DPS database. He is concerned that law enforcement sought retribution against him for exposing those illegal practices.

He alleges that various law enforcement officers and other individuals began accessing his personal database information in 2003, resulting in some 430 name-based inquiries. Because Sherno's complaint was filed on April 4, 2014, claims based upon those accesses that occurred prior to April 4, 2010, are time-barred.

Having reviewed those accesses that fall within the four-year limitations period, we conclude that, when viewed both individually or collectively, they do not reveal a suspicious pattern of timing, frequency, or source-point. For example, of the nine accesses obtained by members of the Anoka County Sheriff's Office over a

period of eleven years, several are identical in time, user, and information. There were only two within-limitations period accesses, both of which were obtained at the same time by the same user and thus are to be viewed as a single obtainment. Even when viewed in light of the pre-limitations Anoka County accesses, this within-limitations access does not render Sherno's complaint plausible as to that entity.

Likewise, the single within-limitations accesses by Goodhue County, Hennepin County, and the City of Edina, as well as those by the Shakopee, Golden Valley, Savage, and North Mankato Police Departments, are insufficient in timing or date to suggest a suspicious pattern.

Accordingly, we affirm the district court's dismissal of Sherno's complaint against all defendants.

5. Jay Clifton Kolls Complaint

Kolls has been a television and news reporter for twenty-nine years. From 2006 to 2010, he hosted a morning Twin Cities radio show five days a week. He has won five national awards for his investigative reporting, including the Edward R. Murrow Award. At the time he filed his February 11, 2014, complaint in this action, he was working as a reporter for KSTP, the ABC news affiliate in the Twin Cities.

He alleges that beginning in 2003, personnel from numerous agencies, counties, cities, and private businesses accessed his DPS database information some twenty-seven times, with some of the accesses occurring at times when Kolls was not in the area from which the accesses originated. His supplemental brief alleges that a number of time-barred accesses occurred within a few minutes of his leaving the air–three from unrelated entities on October 26, 2009, one close-in-time access on October 30, 2009, and one close-in-time access on November 10, 2009. There was one within-limitations period on-air access by the St. Paul Police Department on

February 11, 2010. There was one time-barred late-night access by the City of Edina and one within-limitations period late-night access by the City of Mound.

Having given Kolls's time-barred claims the consideration required by McDonough, we conclude that they are insufficient in number, timing, and pattern to render plausible his timely filed claim against the St. Paul Police Department, as well as that against the City of Mound. Accordingly, we affirm the district court's dismissal of his complaint in its entirety.

6. Brian Potocnik Complaint

Potocnik filed this complaint against the City of Minneapolis, the City of St. Paul, and unknown law enforcement officers on April 21, 2014, alleging that the defendants had committed numerous violations of the DPPA. His earlier-filed complaint against these defendants was dismissed for failure of service, see Potocnik v. Anoka County, No. 13-1103 (D. Minn. March 26, 2014), and so we expressed no opinion about those claims in our affirmance of the dismissal of his DPPA complaint against other defendants. McDonough, 799 F.3d at 954-55.

Potocnik's complaint alleges that he served as a Minneapolis police officer until his resignation in early 2006. On March 1, 2006, the Minneapolis *Star Tribune* ran a news story that identified Potocnik as the police officer who was being investigated for alleged sexual battery against a sixteen-year-old girl with whom he had been having a sexual relationship since 2004.

Potocnik's complaint alleges that following the publication of the March 1, 2006, news story, there occurred some 316 accesses of his private personal data by Minneapolis and St. Paul users. Eighteen of the accesses by the Minneapolis users occurred within the four-year limitations period, only one of which was a late-night access, and all of which occurred more than four years after Potocnik's resignation.

None of these accesses occurred on the same day or within a few hours of any accesses attributed to other unrelated entities. There were no within-limitations period accesses by St. Paul law enforcement personnel.

The complaint states that Potocnik has not filed claim with respect to the twenty-seven Minneapolis accesses that he believes were related either to the internal investigation or were otherwise permissible under the DPPA.

Having considered these defendants' alleged within-limitations period accesses independently, as well as in light of the pre-limitations accesses, we conclude that they are insufficient in timing, frequency, and pattern to satisfy McDonough's standard of plausibility, all the more so because of Potocnik's acknowledgment that a number of Minneapolis law enforcement officers had a legitimate interest in obtaining access to his personal data. Accordingly, we affirm the district court's dismissal of the complaint in its entirety.

7. Douglas and Nancy Delaney Complaint

Douglas Delaney, who resides in Cloquet, Minnesota, began his career in law enforcement in 1986 and became an officer for the Metropolitan Airport Commission in 1991, where he served until a job-related injury forced him to retire in 1999. He was divorced from his first wife in 1993. She has friends among law enforcement personnel in Brainerd, Minnesota. Douglas married Nancy in 2004. Douglas alleges that he has voiced concerns about local government in his community, which he alleges has resulted in some feelings of antipathy on the part of local officials, leading to a reasonable inference, he says, that that criticism likely triggered some of the alleged eighty-three improper accesses of his personal information that occurred from 2003 to 2012.

-25-

Nancy Delaney alleges that her personal information was improperly accessed twelve times from 2004 to 2012.

The district court dismissed their complaint as lacking in plausibility, noting that the alleged accesses were conducted by two dozen separate entities over a period spanning nearly a decade, with ten being the greatest number of accesses by any one entity spread over a period of five years, with many of the entities accessing his information only once. No entity accessed Nancy's information more than twice.

The district court was skeptical about Douglas's allegations regarding his ex-wife's friendships with local enforcement personnel in Brainerd, noting that the two had been divorced for more than two decades. As for Douglas's published comments about local government actions, the district court noted that Douglas had not identified the decade in which the comments were made, the nature of the comments, the local government to which they were addressed, or the publication in which they appeared.

The Delaneys filed their complaint on February 7, 2014, rendering any pre-February 7, 2010, accesses time-barred. No accesses of Nancy's data occurred during that four-year period. Within that period, there were three daytime accesses of Douglas's data by Carlton County law enforcement personnel, the first of which occurred on November 2, 2010, the second on November 4, 2010, and the last on September 26, 2011. There was a daytime access from "District Courts" on November 2, 2010, although it is not clear whether that user was unrelated to Carlton County. There was one within-limitations period daytime access by the St. Louis County State's Attorney's office on August 12, 2010, one by the City of Minnetonka on June 21, 2010, one by the City of Mound on December 15, 2010, and one by the City of Bloomington on March 6, 2011.

When considered separately or collectively, these within-limitations period accesses, even when viewed in light of the time-barred accesses, are insufficient in number, frequency, and timing to raise Douglas's complaint to the level of plausibility. It goes without saying that Nancy's complaint likewise fails that test. Accordingly, the district court's dismissal of their complaint is affirmed in its entirety.

8. James Roschen, Megan Roschen, Laura Drazkowski,
Kinsey Drazkowski, David Harms, Beverly Snow, Jerry Snow,
Jerry Gelao, John Adams, Donna Adams, Virginia Kautz, Julie Porcher,
Marlin Graves, Karen Graves, Debra Roschen, Steve Drazkowski,
C. Merl Norman, Anna Mae Norman Complaint

These plaintiffs style themselves as political activists who encouraged each other to criticize Wabasha County government by challenging governmental officials and taking aggressive stands against County offices, County officials, and the County Board. They encouraged each other to write letters to the editor and to be present at board meetings and court hearings. Plaintiff Steve Drazkowski is an elected state representative. Plaintiffs Debra Roschen and David Harms are members of the County Commission, plaintiff Merl Norman was formerly a County Commissioner.

The plaintiffs as a group brought two state court civil lawsuits that sought to halt Wabasha County's alleged governmental illegalities, the first of which alleged that the Wabasha County Study Commission had been improperly organized. The second lawsuit alleged that the Wabasha County Sheriff was operating a legally unauthorized Drivers Safety School.

The plaintiffs allege that as a result of their foregoing actions critical of Wabasha County government, the defendants took retaliatory action by accessing plaintiffs' driver's records for no permitted purpose. They claim that some 600 unauthorized accesses were made by the defendants during the period from April 18,

2003, through the filing of plaintiffs' complaint on September 12, 2013, of which 140 were made by the County defendants named in the complaint.

Of the 140 county-originated accesses, only seventy-seven were made during the post-September 12, 2009, four-year limitations period. Of those within-limitations accesses, sixty-two originated from Wabasha County, and it is to those that we turn our attention.

Of the twenty-two (by our count) within-limitations accesses against Debra Roschen, only two were late-night accesses, and both of those on the same date and hour. The remaining within-limitations accesses occurred on separate dates and times during that four-year period.

None of the four within-limitations accesses of James Roschen's information occurred during late-night hours. Two of those four accesses occurred on the same day and within one minute of each other.

None of the four within-limitations accesses of Jerry Gelao's information occurred during late-night hours.

Only one of the six within-limitations accesses of Jerry Snow's information occurred during late-night hours, and that some two months following the most recent daytime inquiry.

None of the fourteen within-limitations accesses of David Harms's information occurred during late-night hours, and six of those were initiated as non-name license-plate inquiries. Considered singly or as a group, then, the fourteen accesses do not reveal a suspicious pattern.

Of the ten within-limitations accesses of Merl Norman's information, only one occurred during late-night hours, and that as a non-name access. The dates and times of the remaining within-limitations accesses, of which at least half were non-name accesses, do not reveal a suspicious pattern.

Of the four within-limitations accesses of Laura Drazkowski's information, none occurred during late-night hours and two were license-plate based, and thus these accesses reveal no suspicious pattern.

Of the four within-limitations accesses of Steve Drazkowski's information, none occurred during late-night hours and two of which were non-name license-plate based inquiries, and so no suspicious pattern has been shown.

Likewise, the plaintiffs have failed to establish a plausible claim against the remaining defendants. By way of example, only one within-limitations access has been alleged to have been obtained by the Fond du Lac Police Department, one by Hennepin County, one by Ramsey County, and one by the City of Duluth.

Of the fifteen within-limitations accesses originating in Olmsted County, we consider the two same-time accesses of Debra and James Roschen's information on July 21, 2010, as one access, and the three same-time accesses of Jerry and Beverly Snow as one access. None of the remaining twelve accesses occurred on the same day, and only one of which was a late-night access. No suspicious pattern of timing or frequency is revealed even when the time-barred accesses are taken into account.

We conclude, then, that the plaintiffs, both those whose individual clams we have discussed, as well as those plaintiffs whose claims we conclude do not merit individual discussion, have failed to allege a plausible claim against any of the defendants named in their complaint, and so we affirm the district court's dismissal of their complaint in its entirety.

-29-

### 9. Alix Kendall Complaint

Alix Kendall's complaint names as defendants in her DPPA action some 126 Minnesota cities, forty-three Minnesota counties, numerous Minnesota police departments, and a number of private entities. She alleges that law enforcement officers retrieved her personal driver's license applications approximately 3,844 times between 2003 and 2012. She filed her complaint on January 26, 2014, making January 26, 2010, the cutoff date of the four-year limitations period, the effect of which is to reduce substantially the number of the within-limitations period accesses against which the time-barred accesses are considered in determining whether her claim is plausible.

Kendall, who was born and raised in Minneapolis and currently lives in the Twin Cities Metropolitan Area, styles herself as a local celebrity who is well known throughout the area for her work on the Fox 9 News. She has been co-host of the Fox 9 morning news program since its inception in 1999, where she is on the air from 6:00 a.m. to 9:00 a.m. every weekday, following which she co-hosts the Fox buzz from 9:00 a.m. to 10:00 a.m. on weekdays. "Alix Kendall" was plaintiff's former professional pseudonym, which Kendall adopted as her official name in 2001-2002. Kendall has tried to keep her birth name and her personal address private in an effort to maintain some anonymity and keep her home life private. She alleges that she has no history of criminal activity and has never been a subject of criminal investigation.

Kendall alleges that some 780 accesses of her information occurred during her on-air hours, when she obviously was not driving, being contacted by law enforcement, or seeking law enforcement assistance.

In reviewing the complaint against the individual entities, we agree with those defendants who argue that Kendall has overstated the number of the within-limitations period accesses. For example, the DPS audit reveals that one Anoka

County user made four accesses, from 2:42 to 2:44 p.m. on April 28, 2010, and another user made four accesses from 10:13 to 10:15 p.m. on August 11, 2010, followed by one access at 10:26 p.m.

Similarly, a Bloomington user accessed Kendall's information 13 times within the seven-minute 8:56 to 9:03 a.m. time span on January 26, 2010, and a Northfield user accessed the information six times within the 5:36 to 5:37 a.m. time span on March 4, 2010. We view these close-in-time accesses as a single access, as we do the multiple same-user, close-in-time, same-day accesses from Savage, Maple Grove, Richfield, St. Anthony, Spring Lake Park, St. Louis Park, Medina, and Plymouth. As for the remainder of the within-limitations accesses by the other city entities, we conclude that they do not reveal a suspicious pattern of frequency and timing.

Turning to the allegations against other of the local entities, all of the accesses from Dakota County, Ramsey County, and St. Louis County are time-barred, as is the single access by Cars-N-Credit.

As for within-limitations period late-night accesses, there was one from Arlington/Green Isle on February 22, 2011, one from Buffalo Lake on March 12, 2011, one from Howard Lake on May 7, 2012, and another one on May 8, 2012, one from Northfield on March 4, 2010, and another one on June 16, 2010, one from St. Louis Park on April 20, 2010, and one from Woodbury on February 14, 2011, and one from Edina on April 6, 2010. These accesses, scattered in time as they are, do not suggest a suspicious pattern of frequency and timing. McDonough, 799 F.3d at 947. The three 6:48 to 6:49 a.m. December 14, 2006, accesses by the City of Duluth are not only time-barred, but more than seven years remote in time from the commencement of Kendall's action.

There was one daytime access by a Hennepin County Sheriff's Office user on March 5, 2010, and three daytime accesses by one Hennepin County user, occurring

on April 8, 2010, December 6, 2010, and March 2, 2011. Viewed individually or collectively, these accesses do not suggest a suspicious pattern.

Kendall's claims against twenty-nine of the counties she has named as defendants are time-barred. Kendall has not alleged a pattern of concerted activity on the part of those county defendants, and so we conclude that even when considered in light of the within-limitations accesses, they do not raise her claim against them to the level of plausibility.

With respect to the counties in which within-limitations accesses occurred, there were no late-night accesses from Beltrami County. There were five within-two-minute late-night accesses from one Blue Earth County user on August 19, 2011, and another five within a two-minute span by the same user on August 24, 2011. There were six within-two-minute daytime accesses from a Kandiyohi County user on March 23, 2010, and three within-a-one-minute span by the same user on March 28, 2011. There was one daytime access from a McLeod County user on July 21, 2010. There were four daytime within-two-minute accesses from a Meeker County user on June 10, 2010, and three late-night accesses occurring during a one-minute period on December 23, 2010. There were two daytime accesses within a two-minute period by one Pine County user on March 5, 2010.

There were five daytime accesses by a Scott County user occurring in a two-minute period on June 10, 2011. There were four late-night accesses from a Stearns County user during a two-minute period on March 15, 2011. There were three within two-minute daytime accesses from Steele County on January 27, 2011.

We conclude that the within-limitations accesses from all of the above-described entities are insufficient in frequency, timing, and date, as well as in lacking evidence of concerted activity, to establish the suspicious pattern necessary to nudge the claims against them across the line of plausibility.

-32-

Within the limitations periods, there were five daytime accesses from the St. Paul Police Department (three of which could be considered as one access). There were eight late-night and some thirty daytime accesses from the Minneapolis Police Department, which, adjusted for the brief time spans involved, we consider to be, respectively, four and twenty accesses.

Were these the sole Minneapolis/St. Paul accesses to be considered, we might well say that they are insufficient in timing, date, and frequency to state a plausible claim against them. But when viewed in the light of the numerous pre-January 26, 2010, accesses by those entities, both daytime and late-night, which, respectively span some seventeen and seven pages of the DPS audit report, Kendall's complaint takes on a different hue.

She alleges that more than 150 Minneapolis police officers accessed her DPS database information some 567 times from 2003 to 2012 and that more than sixty St. Paul police officers accessed that information some 225 times during that period. More specifically, for example, she alleges that Minneapolis User 63 accessed her information sixty-nine times during that period. Even if adjusted for same-time accesses, these amounted to forty or so separate accesses. As another example, User 78 made eighteen adjusted-time accesses during that time. Of the time-barred pre-January 26, 2010, accesses, some seventy-three by our count were late-night accesses.

The same pattern of frequent same-user accesses holds true with respect to the St. Paul officers' accesses, although not with the same frequency and number. Of the pre-January 26, 2010, accesses, some thirty-nine occurred during late-night hours.

On remand, these two entities may be able to explain the necessity for these numerous accesses, but in the absence of any convincing or obvious explanation, see McDonough, 799 F.3d at 952, they coalesce to nudge Kendall's complaint across the

-33-

line of plausibility. Accordingly, we reverse the dismissal of that portion of the complaint and remand the case for further proceedings.

## 10. Diane Catherine Gavin Complaint

According to her March 7, 2014, complaint, Gavin fulfilled her life-long desire to become a police officer by becoming employed by the Minneapolis Park and Recreation Board (Park Board) as a non-sworn park agent in 1994. Steadfast in her commitment, she put aside all other activities in her life as a volunteer for Minneapolis Crime Prevention and as police reserve and park agent. She became a sworn officer for the Minneapolis Police Department in September 1995, where she served honorably until 2001, when she left the force because of unfair treatment by and unwanted harassment from her fellow officers, including being solicited by married officers and by being subjected to continued sexual advances notwithstanding the complaints she had made to her supervisors. She moved to another state to escape the harassment. She returned to Minnesota in 2003 and worked as a St. Paul Fire Inspector until 2007, when she took a position with the Minneapolis Public Schools, which she held until returned to her Fire Inspector position in 2008. She married in 2013.

The complaint alleges that the DPS audit reveals that beginning in 2002 there were some 430 accesses by the defendants of her private database information. Gavin alleges that she has never been charged with or suspected of committing a crime in any of the counties, municipalities, or other government entities that had requested accesses to her personal information.

The supplemental briefs filed by the defendants reveal the following within-limitations period accesses: A single daytime driver's license access from Ramsey County on October 17, 2012; two daytime accesses from Bloomington, one on March 8, 2010, and the other on May 3, 2010; one late-night access from Woodbury on July

29, 2010; one daytime access from Maplewood on August 27, 2011; one daytime access from Prior Lake on September 8, 2010; one late-night access from Hastings on November 14, 2010; one daytime access from Nisswa on November 23, 2010; and one daytime access from Princeton on December 27, 2010.

There were three daytime accesses from the Edina Driver's License Office, one on December 14, 2010, one on March 16, 2012, and one on February 15, 2013.

There was one late-night access from the Minneapolis Police Department on April 11, 2010, and four daytime accesses, occurring, respectively, on July 6, 2010, July 10, 2010, February 4, 2011, and October 7, 2012.

The complaint alleges that there were fifty-two daytime accesses of Gavin's personal information by the Park Board, thirty of which occurred prior to March 7, 2010, and twenty-two of which occurred within the limitations period. These accesses began some twelve years after Gavin's employment with the Park Board had ended, and most of which occurred some fifteen years after that date. Adjusting for the close-in-time accesses, there were twenty-six time-barred accesses and nine within-limitations accesses.

As we said in <u>McDonough</u>, we should consider when reviewing these DPPA claims whether the defendants have offered lawful, obvious alternative explanations that would render their access-seeking conduct non-suspicious. 799 F.3d at 946, 950. Unlike the accesses from law enforcement personnel, which in the absence of frequency, pattern, and timing may carry an aura of legitimacy, nothing in the record suggests any explanation why the Park Board had any legitimate need to access a long-departed employee's personal driver's license information.

The first of the Minneapolis Police Department accesses occurred two years after her 2001 departure from that office, and the last of which some five years after

that date. While they fall short of the decade-plus time span that marks the Park Board's accesses, they came from the entity from which Gavin had felt compelled to resign because of the unaddressed, unresolved sexual harassment she had experienced during her employment there.

We conclude that the confluence of those circumstances nudges her complaint against these two entities across the line of plausibility, and thus we reverse the dismissal of that portion of her complaint and remand the case to the district court for further proceedings against the Park Board and the Minneapolis Police Department. We affirm the dismissal of the complaint against the other defendants.

11. Michelle Mary Ray Complaint

Ray filed her complaint on February 26, 2014, alleging that the audit report reveals that the defendant agencies and local entities had accessed her personal information some 440 times from 2003 to the date of her complaint. She resides in Elk River, Minnesota, and alleges that she has never been charged with or has been suspected of committing a crime there or in any of the other entities and has never been involved in any civil, criminal, administrative, or arbitral proceedings therein.

Ray married a law-enforcement officer in 1995, with several law-enforcement officers being members of their wedding party. She and her husband divorced in 2012. Now retired, her ex-husband remains good friends with many of those law-enforcement officers who were members of the wedding party, and Ray fears that he and they continue to monitor and check up on her.

The audit report discloses the following within-limitations period accesses of her information. There was one daytime access from Big Lake on August 6, 2012. There was one daytime access from Elk River on September 4, 2012, one on September 5, 2012, three occurring during a three-hour period on December 3, 2012,

two during a one-hour period on January 10, 2013, one on February 22, 2013, one on March 9, 2013, three during a four-hour period on April 20, 2013, and one on April 21, 2013. All but one of the Elk River-emanating accesses were for license plate, vehicle, and driver-record information. Of the two accesses from Sherburne County, the county seat of which is Elk River and which shares overlapping jurisdiction with the county, one is shown as occurring at the same time as one of the January 10, 2013, Elk River accesses, and the other at mid-afternoon on April 20, 2013.

There were three mid-afternoon close-in-time accesses from the Anoka County Attorney's Office on March 14, 2011, and one mid-afternoon access from the Anoka County Sheriff's Office on February 26, 2010.

The single within-limitations access from Hennepin County occurred at 8:24-8:25 a.m. on September 25, 2012, and thus is not part of any suspicious access pattern.

Nothing about the nature, frequency, and timing of the within-limitations period accesses either demonstrates any concerted activity by unrelated entities or suggests a suspicious pattern of accesses from Ray's ex-husband or from anyone else. Accordingly, we affirm the district court's dismissal of her complaint in its entirety.

12. Nadine Babu Complaint

Babu's October 24, 2014, complaint alleged that law enforcement officers had retrieved her personal driver's license information some forty times between 2009 and 2012 by searching for that information by name rather than by license plate number. She alleges that she has no history of criminal activity, has never been subject to criminal investigation, has never sought the assistance of law enforcement personnel, and has done nothing that would have been of legitimate interest to such personnel. Further, she alleges that she was not physically present in the jurisdictions

of fourteen of the fifteen municipalities at the times those municipalities accessed her information.

During her time in graduate school at the University of Minnesota's Carlson School of Business, Babu ran "The Barnyard," a student group dedicated to the University's basketball team. Since 2007, she has worked and written for "Gopherhole.com," a website devoted to all facets of University of Minnesota sports. Three years later, she established a blog on Gopher sports on the *Minneapolis Star Tribune* website. She has also appeared numerous times on KFAN 100.3 FM radio, and on Fox 9 and KARE 11 television to discuss sports/social media. Many of her appearances on radio elicited comments by the various hosts about the sex appeal of Babu's extensive knowledge of sports. Babu founded Babu Social Networks in 2012, of which she is both the CEO and social media strategist.

Adjusted for the close-in-time accesses, the DPS audit report reveals one late-night access and 24 within-limitations period daytime accesses.

Of those daytime accesses from the defendant counties, one came from Benton County on February 16, 2012, one from Fillmore County on May 3, 2012, one from Sherburne County on December 6, 2010, and two from Washington County (October 24, 2010 and March 14, 2011). We conclude that these accesses do not reveal a suspicious pattern.

With respect to the within-limitations period accesses from the defendant cities, except for those alleged below, we also see no suspicious pattern.

We conclude that the same cannot be said of the same-day, same-hour accesses by the following unrelated entities. Babu points to the February 3, 2011, accesses from the Blaine, Lake Crystal, and Minneapolis Police Departments that occurred, respectively, at 9:14 a.m., 9:36 a.m., and 9:42 a.m. She points as well to the February

17, 2011, 9:24 and 9:25 a.m. accesses from the Eagan and Minneapolis Police Departments. She also alleges a total of five close-in-time within-limitations period daytime accesses by the Minneapolis Police Department.

While the three February 3, 2011, accesses are lacking in frequency, they occurred at an hour at which Babu alleges she was broadcasting on KFAN radio. The fact that she could not have been driving in any of those accessing localities at the time renders suspect any claim that she could have given rise to a contemporaneous need for them to access her DPS information.

While Babu does not specifically allege that she was on the air at the time of the February 17, 2011, accesses by the Eagan and Minneapolis Police Departments, it is more than passing strange that the Eagan accesses occurred at that air-time hour and at a time when she was not present in that city. The same can be said of that same air-time access by the Minneapolis Police Department of a driver against whom no driving charges were ever alleged.

We thus conclude that Babu's ongoing high-profile print and on-air presence renders plausible her allegations regarding the unexplained accesses by the Blaine, Eagan, Lake Crystal, and Minneapolis Police Departments. Accordingly, the dismissal of her complaint against those entities is reversed, and that portion of her case is remanded for further proceedings. The dismissal of her complaint against the remaining defendants is affirmed.

### 13. Ashley Arcaro Complaint

Arcaro filed a complaint against numerous local entities on October 9, 2013, alleging that employees of those entities had, without any legally permissible reason to do so, begun accessing by name her DPS database information immediately following the August 27, 2009, announcement that she would be a contestant on the

CBS Television program "Survivor: Samoa" (Survivor). She alleges that these accesses occurred at times when she was not physically present in any of those local entities. She alleges that similar unauthorized accesses occurred during and following her appearance as a cast member on Survivor, the final episode of which was aired in Minnesota on or about December 20, 2009.

Likewise, similar accesses were made following Arcaro's appearances via telephone on CBS publicity interviews on October 21 and 22, 2009, and her being featured in an article and on the front cover of the February 2010 edition of the Maple Grove Magazine. Again, these accesses emanated from local entities in which Arcaro alleges she was not present or had any interaction with at the time. She alleges that officers in the same local entity accessed her information within minutes of each other, notwithstanding the fact that she had committed no criminal activity that would have warranted such accesses.

All told, Arcaro alleges that the entities accessed her personal information more than 100 times between February 2, 2009, and December 18, 2012, each time by her name and not by her vehicle registration or license number, and, with the exception of the City of Minneapolis, at a time when she was not physically present in the inquiring local entity.

Of these 100-plus accesses, some twenty-five, as we calculate them, occurred during the post-October 9, 2009, within-limitations period. Of these, there was one late-night access from the Minnetonka Police Department on October 16, 2009, and one from Maplewood on December 31, 2009.

Adjusted for same-time, same-caller accesses, there were some fifteen within-limitations period daytime accesses from the Minneapolis Police Department, seven of which occurred during a forty-six minute period on June 18, 2010. There were

nine accesses from Shakopee within ninety minutes on October 5, 2010, and one on October 6, 2010.

From October 9, 2009 to December 31, 2009, there was one daytime access each from Clarksfield, Minnetonka, Maplewood, Maple Grove, Jordan, and Fridley. From January 1, 2010 to February 10, 2012, there were four daytime accesses from Maple Grove, one from Owatonna, and three from Sartell.

The district court held that the post-January 1, 2010, accesses occurred after Arcaro's time in the public eye had ended and thus could not be linked to a significant event in her life. We do not agree, for however brief Arcaro's moment of local fame may have been, the post-publicity accesses should not be so neatly truncated from those that occurred almost simultaneously upon the announcement of her participation on the Survivor program. Accordingly, in view of the seven June 18, 2010, accesses from the Minneapolis Police Department and the nine accesses from Shakopee on October 5, 2010, we reverse the dismissal of the complaint as to those two entities.

We conclude that the within limitations-period accesses from the remaining entities do not reflect a suspicious pattern of frequency or timing, as they do not show accesses on the same day or within a few hours of accesses by other unrelated entities. In short, they do not fall within any of the three categories that McDonough held would merit consideration as a plausible claim. Accordingly, the dismissal of the complaint against those entities is affirmed, the dismissal of the complaint against the City of Minneapolis and the City of Shakopee is reversed, and the case is remanded for further proceedings.

Conclusion

In No. 14-3151, Tichich v. City of Bloomington, et al.; No. 14-3188, Porter v. City of Brooklyn Park, et al.; No. 14-3225, Barghini v. Anoka County, et al.; No. 14-3288, Sherno v. Anoka County, et al.; No. 14-3750, Kolls v. City of Edina, et al.; No. 14-2964, Ray v. Anoka County, et al.; No. 14-3448, Potocnik v. City of Minneapolis, et al.; No. 14-3673, Delaney v. Beltrami County, et al.; and No. 14-3651, Roschen v. Wabasha County, et al., the judgments dismissing all claims against all defendants are affirmed in their entirety.

In No. 15-1288, Kendall v. City of Albert Lea, et al., the dismissal of the complaint against the City of Minneapolis and the City of St. Paul is reversed, and the case is remanded to the district court for further proceedings with respect to those defendants. The dismissal of the complaint against the remaining defendants is affirmed.

In No. 14-3404, Gavin v. Anoka County, et al., the dismissal of the complaint against the Minneapolis Park and Recreation Board and the City of Minneapolis is reversed, and the case is remanded to the district court for further proceedings with respect to those defendants. The dismissal of the complaint against the remaining defendants is affirmed.

In No. 15-1805, Babu v. City of Becker, et al., the dismissal of the complaint against the City of Blaine, the City of Eagan, the City of Lake Crystal, and the City of Minneapolis is reversed, and the case is remanded to the district court for further proceedings with respect to those defendants. The dismissal of the complaint against the remaining defendants is affirmed.

In No. 15-1846, Arcaro v. City of Anoka, et al., the dismissal of the complaint against the City of Minneapolis and the City of Shakopee is reversed, and the case is

-42-

remanded to the district court for further proceedings with respect to those defendants. The dismissal of the complaint against the remaining defendants is affirmed.

_____