# United States Court of Appeals
## For the Eighth Circuit
_____

No. 16-3063
_____

Jennifer Ray Heglund; Jamie Lee Heglund,

*Plaintiffs - Appellants*,

v.

Aitkin County; City of Aitkin; City of Babbitt; City of Biwabik; City of Breitung; City of Chisholm; City of Cloquet; Cook County; City of Cook; Crow Wing County; City of Deer River; Douglas County; City of Duluth; City of Ely; City of Emily; City of Eveleth; City of Floodwood; City of Forest Lake; City of Gilbert,

*Defendant*s,

City of Grand Rapids,

*Defendant - Appellee*,

Hennepin County; City of Hermantown; City of Hibbing; City of Hill City; City of Hoyt Lakes; City of International Falls; Itasca County; City of Keewatin; Lake County; City of Leech Lake; City of Maple Grove; City of Minneapolis; City of Nashwauk; Norman County; City of Orono; Pine County; Ramsey County; City of Roseau; City of Sartell; Scott County; Sherburne County; City of St. James; St. Louis County; City of St. Paul; City of Two Harbors; City of Virginia; Washington County; Winona County; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1-600), acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30), acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; Entity Does (1-100),

including cities, counties, municipalities and other entities sited in Minnesota,

*Defendants*,

Frank Scherf, acting in his individual capacity as the Assistant Chief of the Grand Rapids Police Department,

*Defendant - Appellee*,

Kevin Friebe, acting in his individual capacity as a Sergeant of the St. Louis County Sheriff's Office; Eric Hanegmon, acting in his individual capacity as a Deputy of the St. Louis County Sheriff's Office; David Lovaas, acting in his individual capacity as a Deputy of the St. Louis County Sheriff's Office; Diane McComesky, acting in her individual capacity as an employee of St. Louis County; Linda Smith, acting in her individual capacity as an employee of the St. Louis County Sheriff's Office; Wayne Toewe, acting in his individual capacity as a Deputy of the St. Louis County Sheriff's Office; Kenneth Weis, acting in his individual capacity as a Deputy of the St. Louis County Sheriff's Office; Roberta Nyland; William Evans, acting in his individual capacity as a Deputy of the St. Louis County Sheriff's Office,

*Defendants*.

————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

————————

Submitted: May 11, 2017
Filed: September 7, 2017

————————

Before SMITH, Chief Judge, COLLOTON and KELLY, Circuit Judges.

————————

COLLOTON, Circuit Judge.

Jennifer Heglund and her husband Jamie Heglund sued numerous Minnesota cities and counties, state officials, and hundreds of John and Jane Does, alleging that police officers had improperly accessed their private information in the State's driver's license database. The Heglunds later amended their complaint to replace one of the John Does with Frank Scherf, the former Grand Rapids assistant chief of police. The district court granted summary judgment for Scherf and Grand Rapids on the ground that the claim was barred by the statute of limitations. The court concluded that the Heglunds' amended complaint naming Scherf did not relate back to the timely original complaint, because the Heglunds did not make a "mistake" within the meaning of Federal Rule of Civil Procedure 15(c) by suing "John Doe" rather than Scherf in their original complaint. We agree with the district court's[1] conclusion that the Heglunds' use of the John Doe pleading device was not a "mistake" under Rule 15(c), and therefore affirm.

I.

Jennifer Heglund is a former law enforcement officer who worked for a few different cities and one county in Minnesota. In 2013, Jennifer and her husband Jamie requested an audit from the Minnesota Department of Public Safety to determine whether their private information had been accessed through the State's driver's license database. According to the complaint, they requested the audit because Jennifer's ex-husband, a Minnesota State Trooper, had harassed Jamie on several occasions, and Jennifer was concerned that her ex-husband had obtained the couple's private information.

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

The audit showed that Jennifer's information had been accessed 446 times between 2003 and 2013, and that Jamie's had been accessed 34 times from 2006 to 2013. On September 9, 2013, the Heglunds sent notice-of-claim letters to the entities identified in the official audits; one was the City of Grand Rapids. The letter listed the dates and times of the accesses that the Heglunds claimed were in violation of the federal Driver's Privacy Protection Act (DPPA), 18 U.S.C. § 2721.

The DPPA forbids state motor vehicle departments from disclosing personal information contained in motor vehicle records—such as an individual's name, address, or photograph—except for uses explicitly enumerated in the statute. *See* 18 U.S.C. §§ 2721(a)-(b), 2725(3). One such permissible use is by "any government agency, including any court or law enforcement agency, in carrying out its functions." *Id.* § 2721(b)(1). A person who knowingly obtains, discloses, or uses an individual's personal information from a motor vehicle record "for a purpose not permitted" is liable to the individual. *Id.* § 2724(a). The Minnesota Department of Public Safety collects personal information in the process of registering and licensing drivers of motor vehicles. State and local law enforcement, including the Grand Rapids police department, have access to this information through an Internet portal.

On January 31, 2014, the Heglunds sued nearly three dozen cities, more than a dozen counties, the current and former commissioners of the Minnesota Department of Public Safety, and hundreds of John and Jane Does. The Heglunds brought claims for violations of the DPPA under the Act itself and under 42 U.S.C. § 1983, as well as state-law claims for common-law invasion of privacy. Many of the defendants, including Grand Rapids, promptly moved to dismiss the claims as insufficiently pleaded and barred by the applicable four-year statute of limitations. *See* 28 U.S.C. § 1658(a); *McDonough v. Anoka County*, 799 F.3d 931, 939, 943 (8th Cir. 2015). The district court dismissed most of the DPPA claims as untimely and dismissed the § 1983 and invasion-of-privacy claims for failure to state a claim.

After a series of settlements, the only remaining claim was based on the access of Jennifer's information on March 25, 2010 by someone at the Grand Rapids Police Department.[2] The Heglunds served Grand Rapids with discovery requests on October 14, 2014. On December 1, the city replied, informing the Heglunds that Frank Scherf was the officer who had accessed Jennifer's information. In February 2015, Grand Rapids moved for summary judgment, but the district court denied the motion so that the Heglunds could conduct discovery. The Heglunds then deposed Scherf. In March 2015, the Heglunds moved to amend the complaint to substitute Scherf for a John Doe defendant. The district court granted the motion to amend.

Grand Rapids and Scherf then moved for summary judgment based on the statute of limitations. The district court granted the motion, concluding that the Heglunds' amended complaint did not relate back to the timely original complaint because the Heglunds' use of "John Doe" rather than "Scherf" in the original complaint was not a "mistake" within the meaning of Rule 15(c). That rule provides that an amended complaint "relates back" to the original complaint for purposes of timing if the party added in the amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." The district court ruled alternatively that even if the action were timely, Scherf would be entitled to summary judgment because the Heglunds failed to demonstrate a genuine issue of material fact as to whether Scherf violated the DPPA.[3] The Heglunds appeal.

---

[2]The Heglunds claim that Scherf's access of Jennifer's information counts as five separate accesses under the DPPA. Whether Scherf's alleged actions constituted one access or five is not necessary to our decision, so we do not resolve the question.

[3]The Heglunds claim that because Grand Rapids knowingly authorized Scherf to obtain Jennifer's personal information, the city is vicariously liable for Scherf's acts. They do not argue on appeal that there is any separate basis for proceeding against Grand Rapids if the claim against Scherf is barred by the statute of limitations.

II.

As a preliminary matter, Scherf and Grand Rapids argue that the Heglunds lack Article III standing to bring their DPPA claim, because they have not demonstrated an injury in fact. Scherf and the city contend that a statutory violation alone is not an injury in fact, and that Jennifer's professed anxiety from knowing that Scherf improperly accessed her personal information is not sufficiently concrete to constitute an injury in fact under Article III. We review standing *de novo*. *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 929 (8th Cir. 2016).

To demonstrate Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). An injury in fact must be both particularized to the plaintiff and also concrete—real, not abstract. *Id.* at 1548. Congress cannot supplant Article III's standing requirements by conferring a statutory right to sue on a plaintiff who would not otherwise have standing. *Id.* at 1547-48. But Congress may elevate *de facto* concrete injuries, whether tangible or intangible, into legally cognizable injuries. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992). To determine whether an intangible harm counts as an injury in fact, we must consider Congress' judgment and whether the alleged intangible harm has a close relationship to a harm that traditionally provided a basis for suit in the Anglo-American legal system. *Spokeo*, 136 S. Ct. at 1549.

In light of those considerations, we conclude that the Heglunds have standing to bring their DPPA claim. An individual's control of information concerning her person—the privacy interest the Heglunds claim here—was a cognizable interest at common law. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989); *Pichler v. UNITE*, 542 F.3d 380, 388 (3d Cir. 2008); *cf. Braitberg*, 836 F.3d at 930. In enacting the DPPA, Congress recognized the potential

-6-

harm to privacy from state officials accessing drivers' personal information for improper reasons. *See Maracich v. Spears*, 133 S. Ct. 2191, 2195 (2013).

The Heglunds do not allege a bare procedural violation; they claim that Scherf violated the DPPA's substantive protections by invading Jennifer's privacy. This allegation distinguishes the Heglunds' claim from the one advanced in *Braitberg* based on a cable company's procedural violation of its statutory duty to destroy personally identifiable information the cable company lawfully obtained. *See* 836 F.3d at 930. In concluding that the *Braitberg* plaintiff failed to allege an injury in fact, we contrasted the "common law tradition of lawsuits for invasion of privacy"—the tradition that the Heglunds invoke here—with the lack of comparable tradition of suits for retaining information lawfully obtained. *Id.* The intangible harm associated with an alleged violation of the DPPA's substantive protections is sufficient for the Heglunds to establish an injury in fact. *Accord Graczyk v. W. Publ'g Co.*, 660 F.3d 275, 278 (7th Cir. 2011); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 n.15 (5th Cir. 2010).

III.

The Heglunds argue that their claim is timely based on two alternative grounds. First, they say that the court should apply equitable estoppel to preclude Scherf from relying on the limitations period as a defense. The doctrine of equitable estoppel prevents a defendant from relying on the statute of limitations if the defendant knowingly allowed the plaintiff to think that she sued the proper party or actually misled the plaintiff as to the proper party's identity. *Schrader v. Royal Caribbean Cruise Line, Inc.*, 952 F.2d 1008, 1013 (8th Cir. 1991). The Heglunds claim that equitable estoppel applies here, because Grand Rapids and the Minnesota Department of Public Safety prevented them from identifying Scherf at an earlier time. They complain that Grand Rapids delayed discovery by filing an early motion to dismiss, and that the discovery of Scherf's identity was hindered by the Department of Public

Safety's initial refusal to disclose which officers accessed the Heglunds' driver's license records.

We conclude that equitable estoppel does not apply. Filing a prompt motion to dismiss is not the sort of inequitable conduct that calls for application of the doctrine. The Heglunds point to language in *Schrader* that "[a] defendant's actions making it difficult for the plaintiff to learn the intended defendant's proper name until after the limitations period expire[s]" may form the basis for equitable estoppel. 952 F.2d at 1013. But read in context, that language refers to a defendant's affirmative conduct that was designed to, or was unmistakably likely to, mislead the plaintiff. *Id.*; *see also Bell v. Fowler*, 99 F.3d 262, 268-69 (8th Cir. 1996). Grand Rapids did not engage in misleading conduct here. The Heglunds submitted the discovery request to Grand Rapids on October 14, 2014, more than six months after the statute of limitations expired. And any delay by the Minnesota Department of Public Safety is not attributable to Grand Rapids or Scherf.

Second, the Heglunds contend that under Rule 15(c), the amended complaint naming Scherf relates back to the date of the timely original complaint. As applicable here, Rule 15(c) provides that an amended complaint relates back to the date of the original complaint when: (1) the claim or defense asserted in the amended complaint arises out of the same conduct, transaction, or occurrence set out in the initial complaint, (2) within 90 days after the original complaint was filed, the party to be added "received such notice of the action that it will not be prejudiced in defending on the merits," and (3) upon receiving notice, the party to be added "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C); 4(m). When those conditions are satisfied, the amended complaint is treated as if it were filed on the date of the original complaint. *See Hayes v. Faulkner County*, 388 F.3d 669, 675-76 (8th Cir. 2004).

The district court concluded that the Heglunds' amended complaint failed to satisfy the third requirement because the Heglunds' use of the John Doe pleading device did not qualify as a "mistake." The parties agree that the Heglunds sued "John Doe" in their original complaint because they did not then know the name of the officer who accessed Jennifer's information on March 25, 2010. We review *de novo* the district court's grant of summary judgment and its interpretation of Rule 15(c).[4]

The Heglunds argue that lack of knowledge of the proper party's identity qualifies as a mistake under Rule 15(c). Scherf and Grand Rapids contend that the Heglunds' decision to name a John Doe defendant cannot be characterized as a mistake because the Heglunds knew that they lacked knowledge of the defendant's true identity—there was no misunderstanding or misconception. They argue that the Heglunds intentionally represented their lack of knowledge about the identity of the defendant, so there was no mistake, and the Heglunds' amended complaint does not relate back under Rule 15(c).

In *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010), the Supreme Court reasoned that relation back under Rule 15(c) depends on "what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Id.* at 548. The Court stated that a plaintiff's knowledge is "relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake." *Id.* At the same time, however, the Court affirmed that a plaintiff's deliberate choice, made with a full understanding of the legal and factual situation, is "the antithesis of making a mistake." *Id.* at 549. By contrast, a mistake occurs if a plaintiff knows that two or

---

[4]This court briefly discussed in *Foulk v. Charrier*, 262 F.3d 687, 696 (8th Cir. 2001), whether an amendment to replace a "John Doe" defendant will relate back under Rule 15(c), but the court resolved that case on other grounds.

more parties exist but chooses to sue the wrong one based on a misunderstanding about that party's status or role. *Id.*

The Court defined mistake as "[a]n error, misconception, or misunderstanding; an erroneous belief." *Id.* at 548 (quoting *Black's Law Dictionary* 1092 (9th ed. 2009)). It also described a mistake as "a misunderstanding of the meaning or implication of something"; "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention"; "an erroneous belief"; or "a state of mind not in accordance with the facts." *Id.* at 548-49 (quoting *Webster's Third New International Dictionary* 1446 (2002)).

We conclude that naming a John Doe defendant is not a "mistake." Mistake implies inadvertence or a sincere but wrong belief. "Error," which *Krupski* recognized as synonymous with mistake, is defined as "an act involving an *unintentional* deviation from truth or accuracy." *Webster's Third New International Dictionary* 772 (2002) (emphasis added). That same dictionary entry notes that while error and mistake are synonyms, error implies "a deviation from correct . . . course," and mistake "suggests a *misunderstanding*, wrong decision, or *inadvertent* wrong action." *Id.* (emphases added). The very definition of "mistake" cited in *Krupski* reflects this meaning when the coordinate subsense of the word is reproduced in full: "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention **:** *an unintentional error*." *Id.* at 1446 (emphasis added). Other lay dictionaries confirm that "mistake" implies an unintentional error through lack of understanding. *See American Heritage Dictionary* 1128 (5th ed. 2011) ("An error or fault resulting from defective judgment, deficient knowledge, or carelessness" or "[a] misconception or misunderstanding."); *Oxford English Dictionary* (2d ed. 1989) ("A misconception or misapprehension of the meaning of something; *hence*, an error or fault in thought or action."); *Webster's New World Dictionary of the American Language: College Edition* 942-43 (1968) ("A fault in understanding, perception, interpretation, etc.").

-10-

The same is true in legal dictionaries. The definition from *Black's Law Dictionary* cited in *Krupski*—"[a]n error, misconception, or misunderstanding; an erroneous belief"—implies a lack of intentionality. Earlier editions of *Black's* expressly include the modifier "unintentional" in the definition of mistake. The fourth edition, which prevailed in 1966 when Rule 15 was amended to add the "mistake" language, defined the term as "[s]ome *unintentional* act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence." *Black's Law Dictionary* 1152-53 (4th ed. 1951) (emphasis added); *see also Black's Law Dictionary* 1152-53 (4th rev. ed. 1968) (same).

The Heglunds argue that their John Doe pleading qualifies as a "mistake" because it is "a wrong . . . statement proceeding from . . . inadequate knowledge," one of the definitions from *Webster's* that was cited in *Krupski*. To be sure, the Heglunds used the John Doe device because they had inadequate knowledge of Scherf's identity, but the inclusion of "John Doe" was not a "wrong statement" in the sense of the definition. The device accurately conveyed that the Heglunds did not know Scherf's identity. The statement was not the result of a misunderstanding or misconception; it was an intentional misidentification, not an unintentional error, inadvertent wrong action, or "mistake."

Other circuits likewise have concluded that a plaintiff's lack of knowledge of a defendant's identity is not a "mistake" under Rule 15(c). *See Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012); *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004); *Wayne v. Jarvis*, 197 F.3d 1098, 1103 (11th Cir. 1999), *overruled in part on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) (en banc); *Jacobsen v. Osborne*, 133 F.3d 315, 320-21 (5th Cir. 1998); *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 469-70 (2d Cir. 1995); *Worthington v. Wilson*, 8 F.3d 1253, 1256-57 (7th Cir. 1993). *But see Varlack v. SWC Caribbean*, Inc., 550 F.2d 171, 175 (3d Cir. 1977). Although most of these cases predated *Krupski*, we are not convinced that the Court's analysis dictates that "mistake"

-11-

includes wrong acts or statements made with full knowledge that the named party is not the proper defendant. While *Krupski* concluded that Rule 15(c) focuses largely on what a prospective defendant knew or should have known, the Court was not confronted with an intentional error by a plaintiff that is incompatible with the very definitions of "mistake" that governed the Court's decision. 560 U.S. at 548-49.

The Heglunds urge us to recognize John Doe pleadings as "mistakes" so that plaintiffs with inadequate knowledge will not be subjected to shorter statutes of limitation than plaintiffs who list the wrong defendant in an original complaint. There may well be sound policy arguments for permitting relation back when a plaintiff amends a John Doe pleading to substitute a real person and can satisfy the other requirements under Rule 15(c). *See Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 201 n.5 (3d Cir. 2001). But we think these concerns are best directed to the rulemakers, because it would unduly strain the plain language of the present rule to say that Rule 15(c) encompasses the Heglunds' amendment. Under Rule 15(c), relation back is permitted only when the action originally is brought against the wrong person because of a "mistake." Regardless of when Scherf learned of the action or what he knew about whether the plaintiffs would like to have sued him, the Heglunds did not make a "mistake" in the ordinary sense of the word when they intentionally sued "John Doe" while knowing that he was not the proper defendant.

The judgment of the district court is affirmed.

_____

-12-