# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-3658

_____

Jeremy James Allen

*Plaintiff - Appellee*

v.

Dr. James Amsterdam, Medical Director, MN Doc, in His Individual and Official Capacity; Dr. Edward Shaman, M.D., in their individual capacity; Alyas Masih, M.D., in their individual capacity; Gene Kliber, P.A., in their individual capacity; Centurion of Minnesota, LLC

*Defendant*s

Charles Brooks, in their individual capacity

*Defendant - Appellant*

Rita Iverson, in their individual capacity

*Defendant*

Cheryl Piepho, in their individual capacity

*Defendant - Appellant*

Minnesota Department of Corrections; Paul Schnell, in their individual capacity

*Defendant*s

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 12, 2024
Filed: March 26, 2025
_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Jeremy James Allen filed his original complaint in this matter while incarcerated at the Minnesota Correctional Facility in Faribault. After he was released from custody, Allen amended his complaint. Defendants Cheryl Piepho and Charles Brooks moved for summary judgment, contending Allen's failure to exhaust his administrative remedies at the time he filed his original complaint acted to bar his claim. The district court[1] denied their motion on the grounds that: (1) the Prison Litigation Reform Act of 1995's ("PLRA") exhaustion requirement did not apply because Allen's amended complaint was filed after his release, and (2) the amended complaint did not relate back under Federal Rule of Civil Procedure 15(c). We affirm.

## I.    BACKGROUND

On November 10, 2021, Allen filed a complaint against several named officials at the Minnesota Correctional Facility in Faribault and John and Jane Doe, who were unidentified members of the medical staff. His complaint alleged deliberate indifference and medical malpractice claims arising from a hand injury occurring in December of 2017. During his incarceration, from July 26, 2017, through April 18, 2022, Allen never filed a grievance with prison officials related to either his injury or medical treatment. He instead commenced this action in state court, which was removed to federal court on December 17, 2021.

_____

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

-2-

While his action was pending and less than two weeks after Allen was released from custody, the district court granted Allen's unopposed motion for leave to amend his complaint.[2] In his amended complaint, Allen substituted Charles Brooks and Cheryl Piepho for the John and Jane Doe defendants. All defendants jointly moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. Their motion did not raise exhaustion of administrative remedies as a reason for dismissal.

After various parties and claims were voluntarily dismissed, the only remaining claim was Allen's deliberate indifference claim against Brooks and Piepho. The district court denied their motion to dismiss on qualified immunity grounds, finding that Allen plausibly alleged a violation of his Eighth Amendment right to adequate medical care by Brooks and Piepho.

On February 6, 2023, Brooks and Piepho filed their answer to the Amended Complaint raising for the first time a failure to exhaust defense. After being granted leave to raise the failure to exhaust issue in a summary judgment motion, Brooks and Piepho argued that Allen had filed his original complaint while incarcerated and his failure to exhaust his administrative remedies was fatal to his claims. The district court denied Brooks and Piepho's motion on the basis that Allen's amended complaint was brought after his release from incarceration and was not subject to the exhaustion requirement of the PLRA. Additionally, the district court ruled that Allen's amended complaint did not relate back to his original complaint under Federal Rule of Civil Procedure 15(c) because naming John and Jane Doe did not qualify as a "mistake" for purposes of application of the relation back doctrine. Brooks and Piepho appeal.

---

[2]The dissent asserts the timing of the unopposed amended complaint reflects an intentional strategy by Allen's counsel to deprive the defendants of a defense. There is scant evidence in the record to support this assertion.

## II.   ANALYSIS

We review a district court's application and interpretation of the PLRA and Federal Rule 15(c) *de novo*. Foulk v. Charrier, 262 F.3d 687, 703 (8th Cir. 2001) (PLRA); Heglund v. Aitkin Cnty., 871 F.3d 572, 579 (8th Cir. 2017) (Rule 15(c)). In Jones v. Bock, the Supreme Court held that when the PLRA is silent on an issue, that silence "is strong evidence that the usual practice should be followed." 549 U.S. 199, 212 (2007). The Bock Court emphasized that "[i]n a series of recent cases, we have explained that courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." Id.

In ascertaining whether it is appropriate to depart from the Federal Rules, the Bock Court looked to the text of the PLRA itself to determine whether it explicitly or implicitly justified deviating from the usual procedural practice beyond the departures set forth in the PLRA. Id. at 214. The Supreme Court has applied a similar approach in other cases where Courts of Appeals have attempted to impose new pleading standards that have no basis in the text of the Federal Rules or the substantive statute. See, e.g., Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit, 507 U.S. 163, 168 (1993) (determining it could not square the heightened pleading standard applied by the Fifth Circuit in an action under 42 U.S.C. § 1983 with the liberal notice pleading standard in the Federal Rules); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002) (noting the Federal Rules do not contain a heightened pleading standard for employment discrimination suits and explaining that a new standard can only be obtained by amending the rules, not judicial interpretation); Hill v. McDonough, 547 U.S. 573, 582 (2006) (rejecting the imposition of a specific pleading standard for suits filed by capital litigants pursuant to 42 U.S.C. § 1983, as pleading requirements are mandated by the Federal Rules of Civil Procedure and not through case-by-case determinations in the federal courts). This line of precedent reflects and respects that "when Congress meant to depart from the usual procedural requirements, it did so expressly." Bock, 549 U.S. at 216.

Here the PLRA is silent—both explicitly and implicitly—on amendments to complaints and the application of the relation back doctrine. We must then apply

the typical rules governing amendments and relation back in civil actions. To do otherwise would "exceed[] the proper limits on the judicial role." Id. at 203.

In our Circuit, "[i]t is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect." In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000) (citing Washer v. Bullitt Cnty., 110 U.S. 558, 562 (1884)). This line of cases tells us that Allen's original complaint was rendered devoid of legal effect once the amended complaint was filed. This left the amended complaint as the operative complaint under the PLRA. At the time Allen filed his amended complaint, he was no longer an inmate, so the exhaustion requirement did not apply.

Our precedent also makes plain that when an amended complaint identifies by name a defendant previously docketed as John or Jane Doe, the "amendment ordinarily will *not* be treated as relating back to the prior pleading, unless certain conditions set forth in Fed.R.Civ.P. 15(c) are satisfied." Foulk, 262 F.3d at 696. Under Federal Rule of Civil Procedure 15(c), an amended complaint that changes the name of a defendant relates back to the date of the original pleading only

> if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i)     received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Rule 15(c)(1)(B) requires us to consider whether "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the original pleading." This portion of the rule is

satisfied because Allen's claims in his amended complaint arose out of the same conduct that he alleged in his original complaint.

The next consideration in Rule 15(c) is also satisfied. The record contains no indication that Brooks and Piepho received notice of Allen's original complaint. Without notice, Brooks and Piepho did not know nor should have known of Allen's civil action at the time he filed his original complaint.

Finally, this Court has decided that including a John Doe defendant is not a mistake concerning the proper party's identity under Rule 15(c). See Heglund, 871 F.3d at 580 (naming a party as a John or Jane Doe is "an intentional misidentification, not an unintentional error, inadvertent wrong action, or 'mistake.'"). Several of our sister Circuits have held the same. See Garrett v. Fleming, 362 F.3d 692, 696 (10th Cir. 2004); Wayne v. Jarvis, 197 F.3d 1098, 1103 (11th Cir. 1999), overruled in part on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003) (en banc); Jacobsen v. Osborne, 133 F.3d 315, 320-21 (5th Cir. 1998); Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 469-70 (2d Cir. 1995); Worthington v. Wilson, 8 F.3d 1253, 1256-57 (7th Cir. 1993).

Allen's use of John and Jane Doe in his original complaint was not a "mistake" for purposes of Rule 15(c); therefore, his amended complaint does not relate back to his original complaint. Without relation back, Allen is not subject to the exhaustion requirements of the PLRA.

## III.  CONCLUSION

We affirm the district court's decision and remand for further proceedings.

LOKEN, Circuit Judge, dissenting.

Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, to reduce the quantity and improve the quality of prisoner suits challenging conditions of their confinement or the conduct of their custodians.

The PLRA mandates a variety of reforms, among the most important of which is the requirement that inmates "exhaust prison grievance remedies before initiating a lawsuit." Jones v. Bock, 549 U.S. 199, 202-04 (2007).

In December 2017, Jeremy Allen fell from his bunk, injured his wrist, and sought treatment from the Minnesota Correctional Facility's medical providers. In November 2021, without filing or attempting to file a prison grievance concerning the medical care provided, Allen's counsel filed this action in state court, alleging deliberate indifference to a known serious condition and medical malpractice by three physician employees of the corporation that provides medical treatment to Minnesota inmates and by "John and Jane Does A-F," who were described as "nurses employed by the Minnesota Department of Corrections" on duty the nights of December 3-6, 2017.[3] In Johnson v. Jones, we held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. . . . If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in the original). Thus, the initial complaint should have been promptly dismissed.

Allen was released from incarceration on April 22, 2022, with this action still pending. On April 29, the district court granted counsel's unopposed motion for leave to file an amended complaint naming two of the previous John Doe and Jane Doe defendants, Charles Brooks and Cheryl Piepho. On June 29, 2023, the district court denied their motion for summary judgment, holding that Allen was not required to exhaust prison grievance remedies against Brooks and Piepho because

---

[3]Allen also asserted official capacity claims against the Minnesota Commissioner of Corrections, the Medical Director of the Department of Corrections, and the corporate defendant. After defendants removed the case to federal court, these claims and the medical malpractice claims were dismissed with prejudice.

they were first named in the lawsuit after Allen's release. The court now affirms that ruling.

1. The court first decides an issue that has divided other circuits -- whether a prisoner who initially files an action while incarcerated can avoid the PLRA's exhaustion requirement by filing an amended complaint after he is released. Because the PLRA expressly applies to a civil action "brought . . . by a prisoner confined in [a] jail, prison, or other correctional facility," § 1997e(a), it is generally accepted that the PLRA's exhaustion defense does *not* apply to an action filed by a *former* prisoner to recover damages for injuries suffered while confined. See Harris v. Garner, 216 F.3d 970, 979-80 (11th Cir. 2000) (en banc), cert. denied, 532 U.S. 1065 (2001).[4] But consistent with the plain meaning of § 1997e(e), the Eleventh Circuit in Harris concluded that an *amended* pleading filed after the prisoner's release does not affect when the action was "brought." "[T]he confinement status of the plaintiffs at any time after the lawsuit is filed is beside the point." Id. at 981. A majority of the circuits that have addressed this issue agree. See May v. Segovia, 929 F.3d 1223, 1229 (10th Cir. 2019); Stites v. Mahoney, 594 F. App'x 303, 304 (7th Cir. 2015); Cox v. Mayer, 332 F.3d 422, 428 (6th Cir. 2003). I would follow these sound precedents. The court does not even note their existence.

In Jones v. Bock, the Supreme Court reversed a circuit court decision holding that, if a PLRA complaint includes an unexhausted claim, the term "no action shall be brought" requires dismissal of the entire action, including the prisoner's fully exhausted claims. The Court reasoned that the term "no action shall be brought" "has not been thought to lead to the dismissal of an entire action if a single claim fails to meet the pertinent standards. . . . As a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad."

---

[4]We held PLRA exhaustion does apply to an action filed while the plaintiff was incarcerated but not concluded until after his release. See Jefferson v. Roy, No. 16-cv-3137, 2019 WL 4013960 (D. Minn. Aug. 26, 2019), aff'd, 816 F. App'x 35 (8th Cir. 2020).

549 U.S. at 220-21. The decision in Bock turned on a pleading issue, "whether exhaustion must be pleaded by the plaintiff or is an affirmative defense." Id. at 212. Because the PLRA is silent on this issue, the Court held "that the usual practice should be followed," namely, the notice pleading standard under Rule 8(a) of the Federal Rules of Civil Procedure. Id. "[T]he PLRA's screening requirement does not -- explicitly or implicitly -- justify deviating from the usual procedural practice *beyond the departures specified by the PLRA itself*." Id. at 214 (emphasis added).

The amended complaint issue in this case is very different. The issue is timing, not pleading -- whether the initial complaint or the amended complaint determines when the action was "brought" against two John Doe and Jane Doe defendants who were first identified in a post-release amended complaint. Allen's counsel filed the initial complaint more than four years after medical treatment of his injured arm began. He was still confined, but *no* claim was exhausted. Mistakenly, defendants' initial attorneys did not immediately move to dismiss for lack of exhaustion. Months later, Allen's counsel was granted leave to file the amended complaint, seven to ten days after his release from confinement. Allen argues the amended complaint controls and therefore the PLRA's exhaustion defense *does not apply* to claims against Brooks and Piepho that arose during confinement. The court concludes the amended complaint controls because it "supersedes an original complaint and renders the original complaint *without legal effect*. . . . Allen's original complaint was rendered devoid of legal effect once the amended complaint was filed." *Infra* pp. 4-5.

With due respect, I think this categorical rule "cannot be correct." Segovia, 929 F.3d at 1228. It is based on general statements in opinions deciding jurisdictional issues. When federal jurisdiction is at issue, the amended complaint is nearly always controlling. See Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 31-38 (2025); Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473-74 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine

jurisdiction."); <u>Washer v. Bullitt Cnty.</u>, 110 U.S. 558, 562 (1884); <u>cf.</u> 28 U.S.C. § 1653. A significant exception to that "rule" demonstrates that categorical rules are rarely appropriate for these types of issues -- a party's domicile when the original complaint was filed controls whether complete diversity exists; otherwise, a party could "manipulate federal jurisdiction" by changing domicile and filing an amended complaint. <u>New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.</u>, 101 F.3d 1492, 1503 (3d Cir. 1996). Here, Allen's amended complaint did not manipulate federal jurisdiction. It prejudicially manipulated the existence of an ironclad affirmative defense. I would reverse.

Without question, a timely amended complaint supersedes the original complaint and becomes the operative PLRA complaint. But it does not render the initial complaint "without legal effect." For example, the date of the original filing remains the date to determine compliance with the ninety-day service requirement in Federal Rule 4(m). <u>See</u> <u>Lee v. Airgas Mid-S., Inc.</u>, 793 F.3d 894, 898 (8th Cir. 2015); 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1137 (4th ed. 2024). Otherwise, "dilatory plaintiffs could evade [the Rule 4(m)] time deadline by taking advantage of the opportunity under Fed.R.Civ.P. 15(a)." <u>Bolden v. City of Topeka</u>, 441 F.3d 1129, 1148 (10th Cir. 2006). Just like Allen seeks to do here. Nor does an amended complaint void an admission contained in the original complaint. <u>See</u> <u>United States v. McKeon</u>, 738 F.2d 26, 31 (2d Cir. 1984). A party's admissions in the original complaint may be offered into evidence irrespective of later amendments. <u>See</u> <u>First Bank of Marietta v. Hogge</u>, 161 F.3d 506, 510 (8th Cir. 1998); <u>Henderson v. Shell Oil Co.</u>, 173 F.2d 840, 842 (8th Cir. 1949). The court's "usual practice" analysis of this issue is unsound.

Returning to the controlling analysis in <u>Bock</u>, I conclude -- as other circuits have concluded -- that the PLRA is not truly silent regarding whether Allen's amended complaint, rather than his initial complaint, controls a question of timing -- when he "brought" his PLRA action against the John Doe and Jane Doe defendants. As the Eleventh Circuit noted in <u>Harris</u>, the Supreme Court has repeatedly concluded

-10-

that the term "brought" in other statutes refers to the "filing or commencement of a lawsuit, not to its continuation." 216 F.3d at 973-74. "This long history of established meaning is important, because we readily presume that Congress knows the settled legal definition of the words it uses, and uses them in the settled sense." Id. at 974. The court in Harris concluded that the amended pleading did not affect this timing issue; the prisoner's confinement status "any time after the lawsuit is filed is beside the point." Id. at 981.[5] As noted above, three other circuits agree.[6] And in dissenting from denial of a certiorari petition to review a Third Circuit decision that conflicted with Harris, Justice Thomas noted, "we have repeatedly rejected lower courts' attempts to create end-runs around the [PLRA's] exhaustion requirement." Wexford Health v. Garrett, 140 S. Ct. 1611, 1612 (2020).

Under the Harris interpretation of the statute's plain meaning, the only relevant inquiry is whether Allen's claims against Brooks and Piepho for injuries suffered during confinement were exhausted when he filed the initial lawsuit. Put simply, Allen "brought" his claims when he filed his original complaint -- not when he amended it. Because he did not exhaust any prison remedies before filing, the PLRA expressly bars this action. When a PLRA action is filed during confinement and is pending when the prisoner is released, the post-release assertion of new claims or the assertion of old claims against new defendants requires a new PLRA action.

The Supreme Court in Bock did not address the phrase "no action shall be brought" in this context. See Garrett, 140 S. Ct. at 1612. Indeed, the Court explicitly stated that "the PLRA mandates early judicial screening . . . and requires prisoners

---

[5]The Eleventh Circuit reaffirmed its decision in Harris after the Supreme Court's decision in Bock. Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

[6]Our decision in Johnson, which the court simply ignores, is consistent with these authorities: "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court." 340 F.3d at 627 (emphasis in original).

-11-

to exhaust prison grievance procedures *before* filing suit." <u>Bock</u>, 549 U.S. at 202, 211 (emphasis added). As Justice Thomas noted in <u>Garrett</u>, the Supreme Court has repeatedly rejected lower court attempts to end-run PLRA exhaustion. 140 S. Ct. at 1612. It rejected a special circumstances exception that ran counter to the PLRA's text in <u>Ross v. Blake</u>, 578 U.S. 632, 648 (2016). It declined to allow improper exhaustion in <u>Woodford v. Ngo</u>, 548 U.S. 81, 83 (2006). It refused to limit the exhaustion requirement to lawsuits challenging general prison conditions in <u>Porter v. Nussle</u>, 534 U.S. 516, 520 (2002). Thus, following <u>Harris</u> and the majority of circuits on this question of timing is not "deviating from the usual procedural practice *beyond the departures specified by the PLRA itself*." <u>Bock</u>, 549 U.S. at 214 (emphasis added).

Here, the court disregards the text of § 1997e(a) and (e), joining the minority on an issue that has divided the circuits, and undermining, at least in this circuit, the intent of Congress in enacting the PLRA "to reduce the quantity and improve the quality of prisoner suits." <u>Bock</u>, 549 U.S. at 203-04 (quotation omitted). Like Justice Thomas, I think this important issue warrants en banc or Supreme Court review.

2. The court compounds its first error by ruling that Allen's amended complaint controls the timing issue *and* does not relate back under Rule 15(c), thereby depriving two original John Doe and Jane Doe defendants of the PLRA exhaustion defense to which they were entitled when the initial complaint was filed. The amended complaint does not relate back, the court concludes, because "Allen's use of John and Jane Doe in his original complaint was not a 'mistake' for purposes of Rule 15(c)." *Infra* p.6, applying Rule 15(c)(1)(B) and (C)(ii). "Without relation back, Allen is not subject to the exhaustion requirements of the PLRA." *Infra* p.6.

Rule 15(c)(1)(C)(ii) provides that an amended pleading that "changes the party or the naming of the party against whom a claim is asserted" relates back if "the party to be brought in by amendment . . . knew or should have known that the

action would have been brought against [him or her], but for a mistake concerning the proper party's identity." The court, applying Bock's usual procedural practice directive, concludes that Allen's amended complaint does not relate back because "including a John Doe defendant is not a mistake concerning the proper party's identity under Rule 15(c)." *Infra* p.6, accurately citing Heglund v. Aitkin Cnty., 871 F.3d 572, 580 (8th Cir. 2017), cert. denied, 583 U.S. 1093 (2018). In my view, Heglund did not establish a "usual practice" that governs this case. Like most if not all of the published Rule 15(c)(1)(C) circuit decisions, Heglund involved a statute of limitations issue. There, it was appellants seeking relation back relief, "urg[ing] us to recognize John Doe pleadings as 'mistakes' so that plaintiffs with inadequate knowledge will not be subjected to shorter statutes of limitation than plaintiffs who list the wrong defendant in an original complaint." Id. at 580-81. We declined the invitation, as have most circuit courts. See Singletary v. Pa. Dep't. of Corr., 266 F.3d 186, 201 & n.5 (3d Cir. 2001). Here, the decision *not* to relate back benefits Allen, depriving newly-named John Doe defendants of a PLRA-mandated defense to which they were entitled before his release. In these circumstances, Bock's usual procedural practice directive requires far more analysis of the Rule 15(c)(1)(C) factors than the court is willing to undertake.

Moreover, in my view, the district court's ruling on this relation back issue must be reversed for a more serious flaw. The timing of Allen's counsel seeking leave to amend reflects an *intentional* strategy to await Allen's release to deny Brooks and Piepho a valid exhaustion defense. Although "mistake" in Rule 15(c)(1)(C)(ii) is construed as "unintentional error," no case has addressed whether an intent to evade the application of § 1997e(a) will be allowed to succeed. The Supreme Court's consistent enforcement of the exhaustion mandate suggests the answer is no.

In addition, Allen's amended complaint and motion for leave to file did not disclose that the intended effect was to deny Brooks and Piepho an applicable statutory defense. "Perhaps the most important factor . . . for denying leave to amend

-13-

is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1487 at p.701 (2010), citing Zenith Radio Corp. v. Hazeltine Rsch., Inc., 401 U.S. 321 (1971), and other authorities. Had Allen's counsel made this disclosure, leave to amend almost certainly would not have been unopposed, and granting the untimely motion might well have been an abuse of discretion.[7] Therefore, if we remand, I would order the district court to conduct an evidentiary hearing to determine whether the grant of leave to amend should be revoked, leaving Allen to proceed against Brooks and Piepho under the original complaint. Cf. Nieves-Luciano v. Hernandez-Torres, 397 F.3d 1, 4 (1st Cir. 2005) (quotation omitted) ("Interlocutory orders . . . remain open to trial court reconsideration until the entry of judgment.").

Given the common practice of PLRA prisoner plaintiffs and their attorneys to include John Doe defendants (sometimes many of them, known and unknown) in their initial complaints, the court's ruling in this case creates a risk of "opening the floodgates" to increased lawsuits the PLRA was intended to reduce. District courts have the discretion to eliminate most of this risk. I encourage district judges in the Eighth Circuit, when a PLRA suit is filed against John Doe defendants, to adopt as part of the initial screening the case management practice of setting a definite time within which John Doe defendants must be identified or dismissed.

For these reasons, I respectfully dissent.

_____

---

[7]Allen's counsel defended the initial joinder of John and Jane Doe defendants because he "could not make out the names of the persons making entries" in Allen's prison medical records. Of course, had Allen timely exhausted one or more grievances asserting the medical treatment claims at issue, the identity of the nurses on duty the nights of December 3-6, 2017, would have been disclosed long before November 2021.