# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1430

_____

Stephanie Gasca; Mildred Curren; Kenneth Hemphill; Jesse Neely; Amber Wyse; Timothy Gallagher; Solomon Warren

*Plaintiffs - Appellees*

v.

Anne L. Precythe, in her official capacity, Director of the Missouri Department of Corrections; Kenneth Jones, in his official capacity, Chairman of the Missouri Division of Probation and Parole; Jennifer Zamkus, in her official capacity, Vice Chair of the Missouri Board of Probation and Parole; Jim Wells, in his official capacity, Member of the Missouri Board of Probation and Parole; Martin Rucker, in his official capacity, Member of the Missouri Board of Probation and Parole; Ellis McSwain, in his official capacity, Member of the Missouri Board of Probation and Parole; Gary Dusenberg, in his official capacity, Member of the Missouri Board of Probation and Parole; Paul Fitzwater, in his official capacity, Member of the Missouri Board of Probation and Parole

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: January 13, 2026
Filed: March 31, 2026

_____

Before SMITH, ERICKSON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

This appeal asks us to decide whether the Prison Litigation Reform Act's limit on attorneys' fees, 42 U.S.C. § 1997e(d), applies to appellant-parolees' lawsuit challenging Missouri Department of Correction's parole revocation procedures. We find that it does, so we vacate the award and remand for recalculation.

Detained parolees sued under 42 U.S.C. § 1983, claiming the Missouri Department of Correction's parole revocation procedures deprived them of due process. The district court certified a plaintiff class of: "All adult parolees in the state of Missouri who currently face, or who in the future will face, parole revocation proceedings." In 2020, the district court issued an order on remedies, outlining certain practice changes MDOC had to implement. MDOC challenged the order, the district court stayed proceedings pending interlocutory appeal, and we affirmed in part, reversed in part, and remanded. *See Gasca v. Precythe*, 83 F.4th 705, 713 (8th Cir. 2023).

Parolees then timely moved for attorneys' fees based on their partial success in the 2020 order. *See* § 1988(b) (permitting fees for prevailing § 1983 plaintiffs). The district court issued an order in January 2024, retaining jurisdiction and requiring MDOC "to submit updates on their compliance" "on May 1, 2024 and December 1, 2024." A few days later, the court partially granted the parolees' fee request and rejected MDOC's argument that the PLRA's fee cap applies to the award. *See* § 1997e(d) (capping fees for suits brought by prisoners).

MDOC submitted its first compliance report that May. The court reviewed it, confirmed MDOC should submit a second report, and ordered the parolees to submit their own update on MDOC's compliance in December. In their update, parolees requested additional attorneys' fees to cover compliance monitoring costs.

The district court issued its final judgment in January 2025. It permanently enjoined MDOC and granted the parolees more attorneys' fees. Again, the court

rejected MDOC's argument that the PLRA applied. MDOC appeals, claiming both awards should be reduced under the PLRA. Parolees respond that the appeal of the January 2024 award is untimely and that the PLRA does not apply to either award.

Jurisdiction first. Parolees say the 2024 award was immediately appealable and that this appeal is too late. *See BBCA, Inc. v. United States*, 954 F.2d 1429, 1431 (8th Cir. 1992) ("The timely filing of a notice of appeal is a prerequisite to this court's appellate jurisdiction."). We disagree. The January 2024 award was an "interim award of counsel fees." *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980); *see id.* at 757–58 (explaining that when Congress amended § 1998(b), it "contemplated the award of fees *pendente lite*" and "intended to permit [such] interim award[s]"). And since we lack interlocutory appellate jurisdiction to review interim awards, MDOC could not have immediately appealed. *See Strange Music, Inc. v. Anderson*, 419 F. App'x 707, 708 n.2 (8th Cir. 2011) (per curiam); *see also Coleman v. Sherwood Med. Indus.*, 746 F.2d 445, 447 (8th Cir. 1984) (no jurisdiction to immediately review attorneys' fee award where the order could be reviewed after final judgment).

Parolees counter that the 2020 order was a final judgment, so the award was separately appealable and subject to Rule 4(a)'s 30-day timeline. Fed. R. App. P. 4(a)(1)(A); *Obin v. Dist. No. 9 of the Int'l Ass'n of Machinists & Aerospace Workers*, 651 F.2d 574, 584 (8th Cir. 1981) (a motion for attorneys' fees following a final judgment is a "collateral and independent claim" which is "separably appealable" from the merits).[1] But a final judgment is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). "To determine whether a decision is final, we look

---

[1]Parolees also argue MDOC conceded that the 2020 judgment was final in the prior appeal when it said we had appellate jurisdiction under 28 U.S.C. § 1291. Our jurisdiction in the prior appeal came from § 1292(a)(1), and MDOC's "concession" does not sway our independent jurisdictional analysis. *See Wilkins v. United States*, 598 U.S. 152, 158 (2023) ("[D]octrines like waiver and estoppel . . . do not apply to jurisdictional objections.").

for 'some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as the court is concerned, is the end of the case.'" *United States ex rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828, 832 (8th Cir. 2022) (citation omitted). The district court gave no such indication. To the contrary, the 2020 order retained jurisdiction and said: "The Court will contact the parties to schedule an initial status hearing to discuss implementing the remedies set forth in this Order." It labeled the 2020 order's appeal as interlocutory, continued holding conferences with the parties, and ordered further briefing and compliance reports. The court only issued its final judgment on January 28, 2025. MDOC timely filed this appeal 30 days later. *See* Fed. R. App. P. 4(a)(1)(A).

Turning to the merits, the PLRA limits § 1988 attorneys' fees "[i]n any action brought by a prisoner." § 1997e(d). It defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." § 1997e(h). Although the parties agree that the representative plaintiffs met this definition when the complaint was filed, the district court reasoned that the certified class includes members who are not incarcerated or detained but merely "on parole supervision and *at risk of* being reincarcerated." Parolees make this same argument on appeal.

As MDOC points out, the class is actually "all adult parolees . . . who currently face, or who in the future will face, parole revocation proceedings." MDOC says this distinction matters because anyone who will ever "face" parole revocation proceedings will necessarily be incarcerated or detained. MDOC acknowledges that some parolees are not now and may never again be detained, but it says the class does not include those parolees, since they will also never face parole revocation proceedings. We agree.

-4-

Parole revocation proceedings are triggered by the arrest and detention of the parolee.[2] As the district court explained: "A parolee is arrested and detained. Within five to ten days of detention, the parolee is given an initial violation interview with a parole officer to discuss the alleged violations and the parolee's rights during the revocation process." D. Ct. Order of Nov. 12, 2020, at 6. During this "first stage of revocation proceedings," due process requires some minimal inquiry into the violation "as promptly as convenient after arrest" to determine whether there is probable cause to believe that "the arrested parolee" has committed a violation. *Id.* (quotation omitted). The revocation process ends with a revocation hearing where "[p]arole is then either revoked or the parolee is released on parole." *Id.* Because revocation proceedings begin with the parolee's arrest, and because the plaintiff class includes only parolees who face or will face revocation proceedings, anyone fitting the class description also fits the PLRA's definition of "prisoner." *See* § 1997e(h); *Allen v. Amsterdam*, 132 F.4th 1065, 1067 (8th Cir. 2025) ("We review a district court's application and interpretation of the PLRA . . . *de novo*.").

Parolees also argue that the PLRA does not apply because some of the ordered relief helps non-detained parolees. They point to the requirement that MDOC promptly provide parolees with copies of their field violation report. While a field violation report can recommend delayed action or continued parole, rather than revocation, we do not see how this changes whether parolees are detained while facing revocation proceedings. Field violation reports are prepared after the parolee's arrest and while he or she is detained. The court's order requires MDOC to give each parolee his or her report during the "initial violation interview," which occurs after the parolee's arrest. When MDOC decides to end a parole revocation proceeding, whether because of the field report's recommendation or for any other reason, the parolee is released. While some reports may recommend an action that ends detention, nothing about them changes the fact that anyone who will face a

---

[2]We accept the district court's characterization of MDOC's parole procedures, set out in its order on remedies. D. Ct. Order of Nov. 12, 2020, at 6. Parolees have not challenged the order's findings, and MDOC stated at oral argument that the facts surrounding the parole revocation process are undisputed.

parole revocation proceeding will also, at that time, be "incarcerated or detained . . . for[] violations of criminal law or the terms and conditions of parole." § 1997e(h).

Finally, parolees argue that the PLRA's fee cap does not apply because the PLRA applies only to lawsuits challenging prison conditions. While some sections of the PLRA contain this limitation, *see, e.g.*, § 1997e(a), (c)(1), (f)(1), the fee cap section does not. The text is clear: "in any action brought by a prisoner . . . in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that" they comply with the PLRA's limitations. 42 U.S.C. § 1997e(d) (footnote omitted); *see Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 796 n.10 (11th Cir. 2003) ("Congress included the term 'prison conditions' in three of § 1997e's subsections . . . . Clearly, Congress knew how to specify 'prison conditions' and purposefully chose where to do so and where not to do so.").

The fee awards are vacated and remanded for recalculation consistent with the limitations of 42 U.S.C. § 1997e(d).[3]

_____

[3]We leave open whether the 2025 award covers work compensable under 42 U.S.C. § 1997e. *See El-Tabech v. Clarke*, 616 F.3d 834, 841–42 (8th Cir. 2010).